[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 367 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 368 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 369 
The plaintiff claims the application in his favor, of an established rule of the Courts of Equity, which may be expressed in these terms: One who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it. For example, if a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the legatee or devisee accepting the benefit so given to him, must make good the testator's attempted disposition If he insist on retaining his own property which the testator has attempted to give to another person, equity will appropriate the gift made to him for the purpose of making satisfaction out of it to the person whom he has disappointed, by the assertion of his rights. If the parties have done nothing to conclude themselves, and the court will not consider anything done in ignorance of their rights as binding them, the party whose property has been given to another, will be put to his election, either to take what is offered to him in the instrument, yielding up to the party who would otherwise be disappointed, his own property, or to keep what was his own, abandoning the provision made for him in the instrument. (Jarmanon Wills, 385, ch. 15; Story on Eq., § 1075, and seq.)
The plaintiff insists that the bank stock being given to him by the codicil of his fathers will, the defendants cannot claim their shares in it by virtue of their prior title under the will of their uncle Gabriel Havens, without relinquishing *Page 370 
in his favor the lot and buildings on William-street, in New-York, devised to them for life by the same codicil. The case is precisely within the rule which has been mentioned, and which is fully supported by the cases referred to in the treatises which I have quoted, unless there is a distinction arising out of the fact that when John T. Havens executed his codicil, he had an expectancy in the stock which he attempted to bequeath to the plaintiff. On the death of the widow of Gabriel, this stock was to go to John T. Havens, if he should be then living; if he should be then dead, it was given to his three children, the parties to this controversy. If the codicil can be so read that it shall appear that John T. Havens intended only to dispose of his own contingent interest, or in other words, to dispose of the stock on condition that it should come to him by his surviving his sister-in-law, and that he did not attempt to do more, then it cannot be said that the plaintiff is disappointed by the defendants claiming their shares of the stock, and the rule does not apply. Among the numerous cases which I have examined, I do not find any which presents this feature. It is indeed laid down, that in order to furnish a case for compelling an election, it must appear clearly and certainly that the interest attempted to be disposed of was such as the testator did not own. A person, it is said, is not, without strong indications of such an intent, to be understood as dealing with that which does not belong to him. (Dammer v. Pitcher, 2 Myl. Keene, 262; S.C., 5 Sim.,
35.) In that case a testator had government stock, which he had purchased with his own means, and had procured to be transferred to the names of himself and his wife, and which would consequently belong to the survivor upon the death of one of them. He had no other public stock. By his will he gave the rents and profits of certain leasehold houses, "together with all the interest of my funded property or estate of what kind soever, upon trust, to pay the income to his wife for life. After her death he gave various legacies in this form: "to my nephew *Page 371 
J.P., the sum of £ 300, stock four per cent," c.; in that way giving sums in stocks of the same description, and to about the amount, of those standing in the joint names of himself and his wife. Upon the death of the testator his widow was let into possession of the leasehold houses and received the rents. The controversy was between the general residuary legatee of the wife and one of the legatees of a sum in stock, under the will of her husband, the latter insisting that the representative of the wife could not take the stock as survivor, and also the rents of the houses, and that having received the latter under the will, she had elected not to claim the stock under her prior title, but was bound to give effect to the legacies of her husband. But the Lord Chancellor (BROUGHAM) held that there was no attempt in the will to dispose of the stock; but the words "all of my funded property" were not to be construed to refer to the stock standing in the names of himself and wife, but as general terms used to include any stock which he might afterwards purchase, and which he should own at his decease, and that the legacies of sums in stock were not specific, but general pecuniary legacies, as though so much money had been given in pounds sterling. In giving the judgment, the Lord Chancellor used the strong language which I have mentioned, as to the certainty and clearness required, where it is insisted that a person has assumed to dispose of property not belonging to him.
The numerous class of cases in which a provision has been made for a wife by will, and not expressed to be in lieu of dower, and where the real estate has been devised to another by the same will, afford some light upon this question. At the first sight, a devise of a piece of land, or the direction in a will that a particular parcel of real estate should be sold to raise legacies, would seem to be hostile to the idea of a life estate existing in another, in one-third of the same land; and therefore, where in such cases the will makes a provision for the wife, it would appear to be within *Page 372 
the rule requiring her to elect, though it should not be stated in terms that the provision was in lieu of dower. But the courts have held that such a devise or direction is not inconsistent with or repugnant to the claim of dower, and hence that the husband is not in such cases to be understood to have attempted to dispose of the dower estate of the wife. The right to dower is a title paramount to that of the husband, and when he devises the land, though without any qualifying words, an exception of the wife's right to dower is implied. (Adsit v. Adsit, 2 John.Ch. R., 448, and cases cited; Church v. Bell, 2 Denio,
430.)
The language of this codicil, it cannot be denied, is such as would have been used if the testator had understood himself to have an absolute vested interest in these stocks, as the legatee of his brother, to take effect in possession upon the death of his brother's widow. When, however, we see that he and his children were alternate legatees; that in one event he would take the stocks, and in another, equally likely, so far as we can see, to happen, he would have no interest whatever, are we to understand him as assuming to give them to his son at all events, and whoever might turn out to be the owner upon the expiration of the prior enjoyment? If he had said "if these stocks fall to me by the happening of the contingency upon which my title to them depends, then I give them to my son," there would be no pretence of a claim to compel the daughters to elect. In Church v.Kemble (5 Sim., 525), the testatrix made an appointment of a certain fund, in remainder, in favor of a grandchild, in case she had power to do so under the will of her late father. The will of her father only authorized an appointment in favor of children. If the appointment was invalid, the testatrix's daughters were entitled to the interest intended for the grandchild, and they took other benefits under the will. The court held that there was no such attempt to give the daughters' estate to the grandchild as would compel them to elect. *Page 373 
There is not a strong natural equity in sustaining a testamentary disposition, void for want of power in the testator to affect the property attempted to be disposed of, at the expense of another beneficiary under the same will, who happened to own what the testator officiously assumed dominion over. In carrying out the doctrine referred to, the courts assume to know what the testator would have done had he forseen that his attempt would have been ineffectual. They conjecture that he would have withheld the gift to the person who will not relinquish his claims to his own property; or that it is so probable that he would have done so, that they will interpose to produce that result. The rule is therefore founded on a legal presumption; but in all such cases we must be certain that the facts raising the presumption exist. It must be clear beyond all reasonable doubt that he has intentionally assumed to dispose of the property of the beneficiary, who is required, on that account, to give up his own gift. But when we find, as in this case, that he may have intended to dispose of his own expectant interest, and that it is not certain that he meant anything beyond that, though we see that he may have done so, we ought not, I think, to deduce from a fact so uncertain the presumption which can only arise upon a clearly ascertained fact. I am therefore in favor of reversing the judgment of the Supreme Court, and of giving a judgment which shall declare that the defendants are not obliged to elect between the devise to them of the house on William-street and their title to the stocks in question; in other words, to give judgment for the defendants in the case.
JOHNSON, SELDEN PAIGE and BOWEN, Js., concurred.
Ordered accordingly: costs of both parties to be paid out of the fund. *Page 374