NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—December, 1886.

MATTER OF NOYES.

*In the matter of the estate of* FREDERICK B. NOYES, *deceased.*

Testator, by his will, directed the executors to cause his seat in the New York Stock Exchange to be sold as soon after his decease as possible, and also to collect and receive "the amount of insurance upon my" (his) life" from that exchange, and out of the proceeds of his estate,

to pay the sum of $20,000 to C., who proved to be his sole surviving next of kin, and to whom, by the constitution of such exchange, the gratuity referred to in the clause quoted was payable. C. collected from the exchange $10,000, on account of the gratuity, less a discount made in consideration of advanced payment. Upon the settlement of the executors' account,—*Held,*

1. That, in collecting the gratuity fund for her own use, C. must be deemed to have received $10,000, on account of her legacy.

2. That C. was entitled to legal interest upon the remaining $10,000 from the expiration of one year from testator's death; and that the executors were entitled to interest on payments already made by them on account of the legacy, at the like rate from the times of the respective advances.

CONSTRUCTION of will on judicial settlement of executors' account.

EDWARD GOLDSCHMIDT, *for executors.*

BEALE & BEALE, *for Elizabeth Cottam.*

THE SURROGATE.—The second article of the will of this testator, who died in February, 1885, is in words following :

"I direct my executors to cause my seat in the New York Stock Exchange to be sold as soon after my decease as possible, and also to collect and receive the amount of insurance upon my life from the New York Stock Exchange, and out of the proceeds thereof, and out of the proceeds of my estate, to pay the sum of twenty thousand dollars to my beloved aunt, Miss Elizabeth Cottam, of Chatham Four Corners, Columbia county, State of New York; I direct that this legacy be paid as speedily as the law will permit."

After making certain other dispositive provisions, the testator by the 11th article of his will gives the rest, residue and remainder of his estate to his two executors in lieu of all fees, charges and commissions. The executors have paid to Miss Cottam the sum of

$10,000, and for reasons which I shall proceed to state they insist that this payment should be taken as in full satisfaction of her legacy.

It will be noted that the testator has referred to his life insurance in the New York Stock Exchange as one of the sources from which the moneys for discharging his bequest to Miss Cottam should be or might be derived by his executors. But the fact is that his life had not been insured by the Stock Exchange on the day when he executed his will, nor was such insurance effected at any time thereafter.

The evidence is conclusive that, by his reference in the second article of his will to the proceeds of insurance upon his life, he had in mind a sum of money which by reason of his membership in the Stock Exchange, and by virtue of the 24th article of the constitution of that body, would become payable within a year after his death, in accordance with a certain scheme by such article provided.

The scheme is as follows: Whenever a member of the Exchange dies there is levied and assessed against every surviving member the sum of ten dollars, and the faith of the Exchange is pledged to pay within one year after proof of the deceased member's death the sum of $10,000, or so much of that sum as shall be yielded by such levy and assessment, as a "gratuity" from the surviving members of the Exchange to the person or persons specified in a subsequent section of said 24th article. Such subsequent section declares who shall be the beneficiary or beneficiaries of this gratuity. In the event that the deceased member shall leave no wife or child him surviving (and

such was the situation of this testator), the gratuity is declared to be payable to his next of kin.

Now it so happened that at the death of this testator his sole surviving next of kin was his aunt, Miss Cottam, the very person who is named as a legatee under the second article of his will. As such next of kin she became at once entitled to receive from the Stock Exchange the gratuity in such case provided. And on June 29th, 1885, she was in fact paid by that body the sum of $10,000, less four per cent. discount from that date to February 17th, 1886, on which last named day the moneys collected from surviving members of such Exchange would have become payable under its constitution. The executors insist that by reason of this payment their liability to Miss Cottam as legatee was reduced from $20,000 to $10,000. Is this contention sound?

That the moneys obtained by Miss Cottam from the Stock Exchange constituted no part of the testator's estate is a proposition not open to dispute. The rules of that body are carefully framed so as to guard against any such construction. The right of Miss Cottam to receive " the gratuity " was utterly independent of any claims which she had or has under this will. It was a right springing from her kinship to the testator, and from that alone. It must, nevertheless, be borne in mind that the testator has undertaken, by the provisions of his will, to deal with this gratuity fund as if it would constitute at his death a portion of the assets of his estate, and that his testamentary dispositions are made in evident contemplation that such fund would come to the hands of his

legal representatives, and would, like other assets, be devoted by them to the payment of debts and the satisfaction of legacies. He expressly directs his executors "*to collect and receive* the amount of insurance on my" [his] "life from the New York Stock Exchange." By no form of words could he have more conclusively indicated that he regarded the gratuity fund which would become payable at his death as a part of his posthumous estate. He instructs the executors to pay Miss Cottam her legacy of $20,000 out of the moneys collected from such gratuity, which he miscalls his life insurance, *and* out of the proceeds of the sale of his seat in the Stock exchange, and out of the proceeds of his estate in general.

It is claimed by the executors that although Miss Cottam's legacy is thus charged not only upon the proceeds of the so called life insurance but upon the proceeds of all the testator's possessions, the testator intended, and has made his intention manifest, that the legatee should receive from the *aggregate* of these proceeds the sum of $20,000 and no more, and that, having already received from the Stock Exchange the gratuity of $10,000, she must be deemed to have elected to take that gratuity as *pro tanto* a discharge of the $20,000 legacy.

The familiar doctrine of election as applied to wills may be thus stated: A beneficiary who chooses to accept the bounty of a testator must do so upon such terms and conditions as the testator has seen fit to impose. He cannot insist that provisions in his favor shall be enforced and that those to his prejudice shall be ignored or set at naught.

" No man," said the Master of the Rolls, in Whistler
v. Webster (2 *Ves.*, 367) " shall claim any benefit
under a will without, as far as he is able, conforming
and giving effect to everything contained in it whereby
any disposition is made showing an intention that
such a thing shall take place, without reference to the
circumstance whether the testator had any knowledge
of the extent of his power or not. . . . Whether he
thought he had the right, or knowing the extent of
his authority intended by arbitrary exertion of power
to exceed it, no person taking under the will shall
disappoint it. If a testator disposes of the estate of
A., to whom he gives some interest by his will, A. shall
not take that unless he gives up his own estate to
that amount."

In Thellusson v. Woodford (13 *Ves.*, 220), Lord Chan-
cellor ERSKINE gave this exposition of the principle
of election in its application to. wills: " If a testa-
tor, intending to dispose of his property, and mak-
ing all his arrangements under the impression that he
has the power to dispose of all that is the subject of
his will, mixes in his disposition property that belongs
to another person, or property as to which another
person has a right to defeat his disposition, giving to
that person an interest by his will, that person shall
not be permitted to defeat the disposition, where it is
in his power, and yet take under the will. The reason
is the implied condition that there must be an elec-
tion ; for though the mistake of the testator cannot
affect the property of another person, yet that person
shall not take the testator's property unless in the
manner intended by the testator."

"The foundation of the doctrine" (*i. e.* the doctrine of election), says the learned author of the note to Dillon v. Parker (1 *Swan*, 395), "is the intention of the maker of the instrument; and its characteristic in its application to these cases, is that by equitable arrangement effect is given to a donation of that which is not the property of the donor; a valid gift in terms absolute being qualified by reference to a distinct clause, which, though inoperative as a conveyance, affords authentic evidence of intention. The intention being assumed, the conscience of the donee is affected by the condition, not express, but implied, annexed to the benefit proposed to him. To accept the benefit, while he declines the burthen, is to defraud the design of the donor."

Now, it seems to me that this principle of election, which is very clearly enunciated in Havens v. Sackett (15 *N. Y.*, 365), must control the disposition of the case at bar. True, the will before me does not in express terms give to some person other than Miss Cottam the proceeds of the "life insurance" or gratuity fund; but nevertheless these two things are manifest:

*1st*, the testator's intention to dispose of his entire estate through the instrumentality of his will, and

*2d*, his intention to include, among the assets of the estate thus disposed of, the Stock Exchange gratuity.

Both these purposes are as plainly written on the face of the will as they would have been if the testator had inserted in that instrument a schedule of his possessions, distinctly and expressly specifying therein his so called "life insurance," and had in terms bequeathed such life insurance to some person other than his aunt.

The ground on which courts have proceeded in compelling an election is that purposes of substantial justice require the carrying into effect of the *full intention* of the testator. It was incumbent upon Miss Cottam, therefore, if she accepted the benefits of the testator's will, to " conform and give effect to " all its provisions.

By one of those provisions the executors were directed to " collect and receive " the life insurance. It was in the power of Miss Cottam to enable them to carry out this direction by giving them an assignment or power of attorney. If the gratuity fund had thus come into the hands of the executors, and if out of that fund and out of the proceeds of sale of the testator's seat in the Stock Exchange, and out of the proceeds of the estate generally, they had paid the legatee $20,000, they would thereby have fully satisfied the bequest provided for in the second clause of the will.

Now, Miss Cottam has elected to collect the gratuity fund for her own use. Equity will, therefore, appropriate so much of the $20,000 legacy bequeathed to her by the will as shall satisfy the persons whom she has disappointed by the assertion of her rights. It is true, as her counsel insist, that if the testator had left a widow, or if some person other than herself were his only surviving next of kin, she could justly have claimed the full sum of $20,000 from the estate, notwithstanding the failure and inability of the executors to collect the gratuity as directed by the will; but in the event supposed, Miss Cottam would have been powerless to aid the executors in carrying out

the testator's instructions, and no claim, therefore, could justly be made that her legacy should be cut down because of the persistence of some other person in maintaining his rights. Here on the other hand, the property not belonging to the decedent, which he has seen fit to treat as his own, is the property of the legatee herself.

That the view I have taken of the question under discussion will serve to effectuate the actual intention of the testator, appears probable from another consideration.

The agreement of the Stock Exchange does not bind that body to pay upon the death of a member the full sum of $10,000, but to pay that sum or so much thereof as shall be yielded by levy and assessment upon surviving members. If at the time when testator's next of kin became entitled to the gratuity in question, that body had succeeded in collecting from its members but $7,500, the payment of that sum only could have been enforced by the person entitled. In that event the executors would have been required to make up the remaining $12,500 out of the estate. This possibility that the Stock Exchange insurance might fall short of $10,000 may well have furnished the reason for the somewhat peculiar phraseology of the second article of the will. The testator was fixed in his determination that his aunt should receive the full sum of $20,000.

If he had simply given her $10,000 in addition to the "life insurance," his purpose might have been defeated. By assuming the amount to become due from the Exchange as a part of his estate, he made

sure that any deficiency in that particular fund would be supplied from other assets.

There remains to be considered the question what sum, if any, should be paid Miss Cottam by way of interest. That a general pecuniary legacy, given without a designation by the testator of the time for its payment, does not begin to bear interest until a year after the testator's death, is as well settled as any doctrine of law (Bradner v. Faulkner, 12 *N. Y.*, 472; Wheeler v. Ruthven, 74 *N. Y.*, 428; Brown v. Knapp, 79 *N. Y.*, 136; Kerr v. Dougherty, 17 *Hun*, affi'd, 79 *N. Y.*, 327; Vernet v. Williams, 3 *Dem.*, 349).

Section 43 tit. 3, ch. 6, part 2, R. S. (3 Banks, 7th ed., 2300), declares that "no legacies shall be paid by any executor until after the expiration of one year from the time of granting letters testamentary unless the same are directed by the will to be sooner paid."

In commenting upon this provision and the rule of the ecclesiastical and common law courts to which it gives legislative sanction, ANDREWS, J., says, in Wheeler v. Ruthven (*supra*): "The rule that a legacy is payable one year after the testator's death only applies in the absence of a direction in the will controlling the general practice established by the courts, or of other decisive evidence in the instrument, as interpreted in the light of the surrounding circumstances, of a different intention on the part of the testator. The will is to govern where it speaks upon the subject, and the time of payment may be accelerated or postponed at the will of the testator.

But the rule does not yield to doubtful indications in the will of an intention of the testator at variance with it."

Now, there are only two expressions in the will of this testator that can be claimed to evince in the slightest degree a desire on his part that the legacy in question should be paid within the year following his death. One of those expressions is contained in the tenth article : "It is my intention," he there says, " that if my estate shall not realize a sufficient amount to pay all the legacies therein provided for, the legacy to my aunt first herein named shall be paid in full without scaling or reduction."

That this provision exalts the claim of Mrs. Cottam above those of the other beneficiaries under the will is indisputable ; but it gives no direction and makes no suggestion to the executors as regards the *time* when the legacy thus preferred shall become payable.

The expression upon which counsel for the objector mainly relies is the following at the close of the second article of the will : "I direct that this legacy be paid *as speedily as the law will permit.*" The law upon this subject has been already quoted. Unless a legacy is directed by the will to be sooner satisfied, the statute expressly *forbids* its payment until the lapse of a year from the grant of letters testamentary. I am compelled to hold, therefore, that Miss Cottam's legacy did not become payable until February 19th, 1886. She is entitled, however, to interest on $10,000 from November 21st, 1885, one year after the death of the testator (Dustan v. Carter, 3 *Dem.*, 149). She can claim no interest what-

ever on the remaining $10,000, as by her agreement with the Stock Exchange, to which the executors were not parties, she received in June, 1885, the sum of $9,746.68 in discharge of an obligation for $10,000 which that body was not bound to meet until a year from the testator's death.

The executors are entitled to precisely the same credit in this regard as they could have claimed if they had themselves similarly anticipated the payment of $10,000, parcel of the $20,000 legacy.

On November 21st, 1885, interest would have begun to run on the remaining $10,000 but for the fact that the executors had advanced the legatee $200 on April 2d, 1885. They are entitled to a credit of $7.63 for legal interest on such $200 up to November 21st, 1885. The legatee is allowed interest on $9,792.37 from November 21st, 1885, to the time when her claim shall be fully discharged; and from March 11th, 1886, up to the time of such discharge interest will be allowed the executors on their $9,800 payment. If the legatee should be paid to-day (December 1st, 1886) she would be entitled, as I make it, to $176.23.