T. B. WALKER, Exr., *v.* JAMES BOBBITT *et al.*

(*Jackson.*   April Term, 1905.)

1.  **WILLS.** Satisfaction of legacy in remainder inures to the
benefit of the balance of the remainder estate undisposed of by
the will, when.·

    Where a will gives the whole estate to one for life and two-thirds
    thereof in remainder to another, without disposing of the other
    third in remainder, and the life tenant, as executor, satisfies,
    with funds of the estate, the legacy to the remainderman, the·
    whole of the balance of the estate thus left upon this settlement
    constitutes a portion of testator's estate undisposed of by the·
    will after the termination of the life estate. (*Post, pp.* 703, 704.)

2.  **SAME.** Of husband giving widow whole estate for life, and.
her acceptance thereunder, does not deprive her of remainder in.
land held by them by the entirety; election not applicable.

    Where a husband devises to his wife all of his estate, both real·
    and personal, for life, and the only interest the testator had in
    any land was that in a tract of land held by him and his wife·
    by the entirety, the wife took by survivorship the entire inter-
    est in the said tract of land, and was not deprived of the re-
    mainder estate therein, notwithstanding she took under the will,.
    and accepted its provisions, for the doctrine of election is not
    applicable to such a case. (*Post, pp.* 704, 705.)

    Cases cited and approved:  Manufacturing Co. v. Collier, 95 Tenn.,
    115; Dashwood v. Peyton, 18 Ves., 41; McGinnis v. McGinnis, 1
    Ga., 496; Havens v. Sackett, 15 N. Y., 365; Leonard v. Steele, 4
    Barb., 20.

3.  **SAME.** Widow failing to dissent from husband's will is ex-
cluded from intestate personalty.

    Where a widow fails to dissent from her husband's will within·
    the time and manner provided by statute, and the husband

Walker v. Bobbitt.

died intestate as to a portion of his personal property, the same passes to his distributees to the exclusion of the widow. (*Post*, *pp.* 705-710.)

Code cited and construed: Secs. 4146, 4147, 4172 (S.); secs. 3251, 3252, 3278 (M. & V.); secs. 2404, 2429 (T. & S. and 1858); sec. 2404a (T. & S.)

Acts cited and construed: 1766, ch. 3, sec. 1; 1784 (April ses.), ch. 22, sec. 8; 1859-60, ch. 3, sec. 1.

Cases cited and approved: Malone v. Majors, 8 Hum., 577; McClung v. Sneed, 3 Head, 218; Waddle v. Terry, 4 Cold., 51; Waterbury v. Netherland, 6 Heis., 513.

Case overruled: Demoss v. Demoss, 7 Cold., 256.

4. STATUTES. Reenacted statute should have same judicial interpretation that was given to the earlier statute.

Where a statute has received a judicial interpretation, and it is reenacted, it will be presumed the legislature intended it should have the same construction which was given to the earlier statute. (*Post, pp.* 709, 710.)

Cases cited and approved: Malone v. Majors, 8 Hum., 577; Bates v. Sullivan, 3 Head, 632; Waddle v. Terry, 4 Cold., 51; Hospital v. Fuqua, 1 Lea, 608.

---

FROM HENRY.

---

Appeal from the Chancery Court of Henry County.—A. G. HAWKINS, Chancellor.

LAMB & MARR, QUINTIN RANKIN, and W. S. COULTER, for complainant.

FARABAUGH & RYE, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

One Henry Bobbitt died intestate in Henry county, Tennessee, in the year 1890. He left surviving him a widow, Jane Bobbitt, but no lineal descendants. While the owner of some personal property, the only real estate in which he had an interest at the date of the making of his will or at any time thereafter was in a tract of one hundred acres lying in that county, which had been conveyed to him and his wife, and of which they owned the estate by entirety.

In the first clause of his will the testator provided for the payment of his funeral expenses and his debts, and by the third clause he nominated his wife, Jane, as executrix. The second clause of the will is as follows: "I give and bequeath to my beloved wife, Jane Bobbitt, all of my estate, both real and personal for and during her natural life, and at her death, I will and bequeath two-thirds of whatever may remain to the Hopewell presbytery, of the Cumberland Presbyterian Church, to be used by said presbytery in any way they may see proper." By a codicil to the will, duly executed, the two-thirds interest given in this clause to Hopewell presbytery was changed so as to give it to the trustees of the Cumberland University for the endowment of the theological department. It will be observed that the testator made

no disposition of the other one-third remainder interest in either his real estate or personal property.

Upon his death, his wife, surviving him, took upon herself the execution of the will, and at the same time accepted its benefits. From sources not disclosed in the record she received as executrix $6,168.81 from personalty belonging to the estate. From this she paid to the trustees of Cumberland University the sum of $2,000, which was received by them in full satisfaction of the residuary legacy given to them by the codicil. This payment left in her hands the sum of $4,168.81, derived from the personal estate of the testator. She also sold the tract of land of which mention has been made, and received therefor the sum of $4,000. Subsequently she died, leaving a will by the terms of which she gave all of her estate to certain of her collateral kindred. A controversy having arisen between these legatees and the distributees of Henry Bobbitt as to the ownership of these two funds, the present bill was filed by the executor of Mrs. Bobbitt's will, asking the chancery court to fix and determine the rights of the respective claimants to these funds.

As has already been stated, the testator, Henry Bobbitt, died intestate as to one-third of his estate, and no provision was made in his will for the contingency which subsequently occurred of the remaindermen, the trustees of the Cumberland University, taking a part for the whole of the two-thirds given to them. As to the balance thus left upon this settlement, it is clear that it also con-

stituted a portion of his estate undisposed of by his will.

Upon these facts the chancellor held that, surviving her husband, Mrs. Bobbitt took the entire interest in the tract of land of one hundred acres, and that her right of survivorship was not affected by the doctrine of election invoked by the distributees of Henry Bobbitt, and further that, her husband having died intestate as to the portions of the personal estate, she took them under the general statute of distribution; the whole passing to the legatees named in her will. From his decree so holding the heirs and distributees of Henry Bobbitt have appealed and assigned errors.

We agree with the chancellor that the doctrine of election neither as to the land in question nor its proceeds can be invoked by the appellants. This doctrine properly arises where a testator manifests a clear intention to dispose of property not his own, and by other parts of his will from his own estate confers benefits upon the owner of that property. *Dashwood* v. *Peyton,* 18 Vesey, 41. In such case the owner is put upon his election, and if he accepts the benefits he is excluded or estopped from asserting claim to the property so disposed of. But as we understand, this rule or doctrine is not applied save in a case of property in which the testator has no interest. If he has some interest of his own (more than mere possession ) in the thing disposed of, bequeathed by him, he will be deemed by his use of general terms to have intended only a bequest or a devise of his interest, and the owner will not be put to an election between maintain-

ing his former title and claiming the new benefits provided by the will. *McGinnis* v. *McGinnis,* 1 Ga., 496; *Havens* v. *Sackett,* 15 N. Y., 365; *Leonard* v. *Steele,* 4 Barb., 20.

That the testator, Henry Bobbitt, had an interest in this realty at the time he made his will, is well settled. This continued in him until his death. This interest might ripen into a full and complete ownership upon the death of his wife leaving him surviving. We think the existence of this interest, upon principle as well as the authority of the cases cited, would preclude the application of the rule in question. This interest was a valuable one which his creditors might have reached and subjected by execution. *Mfg. Co.* v. *Collier,* 95 Tenn., 115, 31 S. W., 1000, 30 L. R. A., 315, 49 Am. St. Rep., 921. But the event which made the will operative (that is, his death) was the same which carried the whole estate in this land into Mrs. Bobbitt, by reason of the fact that she, of the two, was the longer liver.

The question as to the devolution of the personal estate of which Henry Bobbitt died intestate is now to be considered. In doing this it is necessary to examine the older statutes, as well as the Code provisions with regard to the distribution of the estate of persons dying intestate, and the cases in which some or all of these have been construed and applied.

At common law a devise to the wife by her husband did not prevent her from setting up claim to dower un-

less it was so expressed in or arose by implication from the terms of the will too strong to be resisted; otherwise she could take both her dower and her bequest. This however, was changed by a provision in chapter 22 of the Acts of 1784. By section 8 of the act, among other things, it was provided that "if any person should die intestate, or make his last will and testament and not therein make any express provision for his wife by giving and devising unto her such part or parcel of his real and personal estate as shall be fully satisfactory to her, such widow may signify her dissent thereto before the judge of the circuit court . . . in open court within six months after the probate of said will, and then . . she shall be entitled to dower . . . to wit one-third part of all the lands . . . of which her husband dies seised . . . and furthermore if such husband should die leaving no child, or not more than two, then in that case she shall be entitled to one-third part of the personal estate; but if he should die leaving more than two children, then, and in that case, such widow shall share equally with all the children, she being entitled to a child's part."

It will be seen this statute provides for widows belonging to two different classes, the first of which embraces those whose husbands died without leaving a will; and the second, widows who, being dissatisfied with the provisions in their favor made in the wills of their husbands, dissented therefrom in the manner and time fixed by the statute. A widow belonging to the second class

by a statutory renunciation of the will was put upon the same plane with one whose husband died intestate, and both were let into the estate of their deceased hus-bands in the same decree.

So far as this act dealt with the case of a widow whose husband died intestate, it was but a re-enactment, with some modification, of section 1 of chapter 3 of the Acts of 1766; but the provision for the widow who, dissatisfied with, renounced, her husband's will, was a new departure.

By that statute, as was said in *Malone* v. *Majors,* 8 Humph., 577, "a provision for a wife in a will of itself forces her to elect whether she will take under or against the will, and that within six months from the probate of the will, for, if she do not express her dissent in open court within that time, the provision for her shall be considered as fully satisfactory to her." So it was held that the widow whose claims were there in controversy was not entitled to any part of the estate of which her husband died intestate.

Beyond all doubt, this was regarded as a sound interpretation of the statute, and it is a part of the judicial history of the State that, so construed, it was often applied by the courts. In *McClung* v. *Sneed,* 3 Head, 218, decided in 1859, but involving matters which arose many years prior thereto, in speaking of one whose husband had provided for her in his will, but who had failed to renounce the provision, the court said: "It is a settled

law of this State that she is bound by its provisions, and can take no other part of his estate."

Thus stood the law at the compiling of the Code of 1858. Under section 2404 of that Code (Shannon's Code, section 4146) there was brought forward so much of section 8 of chapter 22 of the act of 1784 as related to the rights of a widow for whom provision was made in her husband's will, but who, dissatisfied therewith, dissented; the time for her dissent being extended to twelve months. As in the original act, it was there provided that such widow so dissenting should participate in his estate as if her husband had died intestate.

It will be observed that this section fails to fix (unlike the original act) the extent to which the dissenting widow would be permitted to share in his estate. As compiled, this was determined by section 2429 (Shannon's Code, section 4172), which provided in cases of intestacy, in the first subsection, that the personal estate of the intestate should go to the widow and children, or the descendants of children—the widow taking a child's share—and in the second subsection to the widow altogether, if there were no children nor the descendants of children. This omission in the codification was corrected by section 1, c. 3, of the Acts of 1859-60, which is in these words: "When a husband shall die leaving a will, from which the widow dissents within the time and in the manner provided by law, and leaving no child, or not more than two, his widow shall be entitled to one-third part of the personal estate, in addition to her dower in

Walker v. Bobbitt.

the real estate as provided by law. But, if the husband had more than two children, the widow shall share equally with all the children, she being entitled to a child's share." This now constitutes section 4147 of Shannon's Code.

So taking the provision of the Code with regard to the dissent by the widow from the will of her husband, and this section of the act of 1859-60, and we have in sub-substance, and without marked change in phraseology, a reproduction of so much of the statute of 1784 as had regard to this matter. This being so, why should the court repudiate the construction so long acquiesced in of that statute?

It is a rule well established, and perhaps universally accepted by courts and textwriters, that where a statute has received a judicial interpretation, and it is re-enacted, it will be presumed the legislature intended it should have the same construction which was given to the earlier statute. Black on Inter. of Laws, 369; Sutherland on Stat. Con., sections 255, 256, 424; *Bates* v. *Sullivan,* 3 Head, 632; *Tenn. Hospital* v. *Fuqua,* 1 Lea, 608.

That this rule was recognized, at least by implication, and the construction given to the original statute in *Malone* v. *Majors,* supra, and other like cases, was assumed to be a part of its texture as re-enacted in the Code, is apparent in the case of *Waddle* v. *Terry,* 4 Cold., 51.

There Milligan, J., speaking for the court, said: "By our law (Code, section 2404) she [the widow] has the right, within one year after the probate of the will, to

elect whether she will accept its provisions or . . . renounce them. . . . If she fails within the time limited to express her dissent according to the forms of law, she is held to be satisfied with the will, and bound by its provisions."

Still later, in *Waterbury* v. *Netherland,* 6 Heisk., 513, it is said that, from the failure of the widow to express her statutory dissent to her husband's will, it will be conclusively presumed she is satisfied with its provisions, and will not be permitted to share in any estate of which he died intestate.

We think this is a sound view of the law. However, a different one was expressed in *Demoss* v. *Demoss,* 7 Cold., 256. The rule there announced was the one applied by the chancellor in the present case. We have carefully examined the opinion in that case, and we are satisfied that its premises were unsound, and the conclusion there reached is in the face of the canon of interpretation to which reference has been made. It stands as against the great weight of authority. We regard it as misleading, and it is therefore overruled.

The result is that the decree of the chancellor is affirmed in so far as it disposed of the proceeds of the realty in question, and is reversed as to the personal estate of which Henry Bobbitt died intestate. Under the statute this estate passed to his distributees.