Catherine Beetson, Appellant, v. Marie E. Stoops, Respondent, Impleaded with Others.

Will — Acceptance of Benefit under Will Involves Renunciation of Rights Inconsistent with Instrument. Where a testator devises a parcel of real estate owned by him to one of his grandchildren, and assumes to devise to the other grandchild a parcel in which he has but a life interest and which is owned by the grandchildren as tenants in common, the devisee cannot accept the devise, with knowledge of all the facts, without being precluded from asserting a claim to the other parcel attempted to be devised, and, therefore, cannot maintain an action to partition the same.

*Beetson* v. *Beetson*, 108 App. Div. 366, affirmed,

(Argued December 6, 1906; decided December 21, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 24, 1905, affirming a judgment in favor of defendant entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George H. Taylor, Jr.*, and *Albert J. Appell* for appellant. The doctrine of election does not apply to the facts of this case, because it appears that Andrew Moll, at the time of the execution of the will in question, had a then present interest of his own in the premises, to which, under our law, his attempted devise thereof must be held to apply. (*Havens* v. *Sackett*, 15 N. Y. 369; *Beal* v. *Miller*, 1 Hun, 390; 2 Story's Eq. Juris. § 1089.) The doctrine of election has no application here, because it does not appear expressly or by implication that the plaintiff, accepting the devise to her of the Seventh avenue property, is required as a condition of such acceptance to relinquish to the defendant Marie Stoops plaintiff's interest in the premises in Twenty-second street, of which partition is sought. (*Walker* v. *Taylor*, 15 App. Div. 457; *Shanley* v. *Shanley*, 22 App. Div. 375; *Beetson* v. *Stoops*, 91 App. Div. 192.)

*Henry Wetherhorn* for respondent. The plaintiff elected to take the Seventh avenue premises under the will of Andrew Moll and thereby relinquished all her right, title and interest in and to the Twenty-second street premises, which thereby became the sole property of the defendant. (Story's Eq. Juris. [13th ed.] 1075–1077, 1082; 2 Jarman on Wills [5th Am. ed.], 1–43; Bisph. Prin. Eq. [5th ed.] 295–306; *Havens* v. *Sackett*, 15 N. Y. 365; *Chipman* v. *Montgomery*, 63 N. Y. 221; *Haack* v. *Weicken*, 118 N. Y. 67; *Shanley* v. *Shanley*, 22 App. Div. 375; 34 App. Div. 172; *Persons* v. *Snook*, 40 Barb. 144; *Hawley* v. *James*, 16 Wend. 61; *Blumer* v. *Blumer*, 2 Bradf. 339; *Weeks* v. *Patten*, 18 Me.

42; *Smith* v. *Guild*, 34 Me. 443; *Morrison* v. *Bowman*, 29 Cal. 337.)

CHASE, J.　Andrew Moll and Kathrina Moll were husband and wife and resided in the city of New York. They had one child, their only heir at law, who died leaving two children, the plaintiff and the defendant Stoops, then small girls, who after the death of their father resided with their grandparents, the said Andrew and Kathrina Moll. Andrew Moll was the owner in fee simple absolute of the real property at 177 Seventh avenue in the city of New York, and Kathrina Moll was the owner in fee simple absolute of the real property at 267 West 22nd street in the city of New York. On the 28th day of June, 1887, Kathrina Moll died intestate seized of said real property on West 22nd street. The title to said real property descended to her said grandchildren in equal shares, subject to the life estate of Andrew Moll, her husband. Said grandchildren continued to reside with their grandfather and he retained the possession of said real property on 22nd street. On the 4th day of February, 1902, Andrew Moll was living on said 22nd street property and on that day he died seized of the Seventh avenue property. He left a will dated the 15th day of February, 1900, by which he directed that his debts, funeral and testamentary expenses be paid. The will then provided :

"*Second.* I hereby give, devise and bequeath unto my dear grand-child, Catherina Margaretha Moll, born at New York City, July 24th, 1881 (Plaintiff), the house and lot known as Number One Hundred and seventy-seven (177) Seventh (7th) Avenue \* \* \*. (describing it), and to her heirs and assigns forever absolutely.

"*Third.* I hereby give, devise and bequeath unto my dear grand-child, Marie Emma Moll, born at New York City, March 1st, 1883 (defendant Stoops), the house and lot now known as number Two hundred and sixty-seven (267) West Twenty-second (22nd) Street \* \* \* (describing it), and to her heirs and assigns forever absolutely."

By the will the testator expresses the wish that each of said grandchildren will keep the real property so given to them until they attain the age of twenty-six years, and he then gives to said grandchildren, in equal shares, the rest, residue and remainder of his estate. The said two pieces of real property were each worth twenty-four thousand dollars. Neither Andrew nor Kathrina Moll owned any other real property, and the personal property of the said Andrew Moll was about sufficient to pay his indebtedness and the expenses of administering his estate. The will of Andrew Moll was probated and thereupon the plaintiff claimed the title and ownership of the Seventh avenue property, under the will of Andrew Moll, deceased, and took and has retained the exclusive possession of the same. She then brought this action to partition the Twenty-second street property, and alleges in her complaint that she is the owner of an undivided one-half interest therein, and that the defendant Stoops is the owner of an undivided one-half interest therein, and she further alleges that she owns no other lands as tenant in common with her sister, the defendant Stoops, and she demands judgment for the partition and sale of the Twenty-second street property, and that it be decreed that said Andrew Moll was never seized of the premises in Twenty-second street, and that he had no right or authority to devise the same or any part thereof. The defendant Stoops invokes the rule in equity that where a testator assumes by his will to devise property owned by him, and also other property not owned by him; that the person to whom is devised the property owned by such testator cannot accept such devise, with knowledge of all the facts, without being precluded from asserting a claim to other property devised by the same instrument. No question arises in this court relating to an election by the plaintiff, because the counsel for the plaintiff stated upon the argument that if the plaintiff be required to elect she will accept the Seventh avenue property and renounce all interest in the Twenty-second street property.

The language used by the testator in devising real property

to his grandchildren is exactly the same in each case, and there is no doubt or uncertainty as to the testator's intention. The plaintiff argues, however, that the testator was in possession of the Twenty-second street property as a tenant for life, and, consequently, at the time of making the will he had an interest in such property. A will speaks from the death of the testator. The testator's life estate in the Twenty-second street property ceased at the very moment when the will took effect. He did not have an interest in the real property that survived his death, and it could not be transferred by will. It is clear that the testator did not make his will with the mistaken and absurd idea that he could transfer his life estate to his grandchild, for the language of the will itself is unmistakable evidence of the testator's intention to give to the defendant Stoops the fee simple absolute of the Twenty-second street property. The facts to which the equitable doctrine of election applies are clearly established.

The equitable rule invoked by the defendant has been followed by the courts for centuries, and it is thoroughly established in England and in this country. It was provided in Justinian's Institutes (Lib. 2, tit. 20, sec. 4) that a testator may not only bequeath his own property or that of his heir but also the property of others; and if the thing bequeathed belongs to another the heir can be obliged either to purchase and deliver it or to render the value of it if it cannot be purchased. The section, however, provided that it should be understood to mean that the bequest could be made if the deceased knew that what he bequeathed belonged to another, and not if he was ignorant of it. It would seem, however, by reference to the Roman Digest (Lib. 31, 1. 67, sec. 8) and the Code (Lib. 6, tit. 42, 1. 25 and lib. 6, tit. 37, 1. 10) that a bequest made upon an erroneous supposition that the subject belonged to the testator would not be void if the legatee stood in a certain degree of relationship to the testator or the subject was the property of the heir. The Code Napoleon substantially recognizes the rule but reversed it by providing in section 1021 of said Code that "where a testator shall have

bequeathed an object belonging to another the legacy shall be annulled whether the testator were aware or not that it did not belong to him." The rule was early adopted in England and it is there held, as it is in this country, that it does not make any difference in its application whether the testator at the time of making his will erroneously supposed that he owned the property bequeathed or knew that it belonged to another. The rule in England was stated by Lord ERSKINE in *Thellusson* v. *Woodford* (13 Ves. 209), as follows:

" The jurisdiction, exercised by this Court, compelling election, may be thus described. A person shall not claim an interest under an instrument without giving full effect to that instrument, as far as he can. If, therefore, a testator, intending to dispose of his property, and making all his arrangements under the impression that he has the power to dispose of all, that is the subject of his will, mixes in his disposition property, that belongs to another person, or property, as to which another person has a right to defeat his disposition, giving to that person an interest by his Will, that person shall not be permitted to defeat the disposition, where it is in his power, and yet take under the Will. The reason is the implied condition, that he shall not take both; and the consequence follows, that there must be an election; for though the mistake of the testator cannot affect the property of another person, yet that person shall not take the testator's property unless in the manner intended by the testator. * * * without reference to the circumstance, whether the testator had any knowledge of the extent of his power, or not: nothing can be more dangerous than to speculate upon what he would have done, if he had known one thing or another: it is enough to say, he had such intention; and the Court will not speculate upon what he would have done in the different cases put: if the instrument is such as to indicate, what the intention was, the only question is, did he intend the property to go in such a manner: not, whether he had power to do so, and would have done it, had he known, he could not without a condition imposed upon another person: whether he thought

he had the right, or, knowing the extent of his authority, intended by an arbitrary execution of power to exceed it, no person, taking under the will, shall disappoint it."

The rule is well stated by Mr. Swanston in his notes to *Dillon* v. *Parker* (1 Swans. 359) from one of which I quote : " The owner of an estate having in an instrument of donation, applied to the property of another, expressions which, were that property his own, would amount to an effectual disposition of it to a third person, and having by the same instrument disposed of a portion of his estate in favor of the proprietor whose rights he assumed, is understood to impose on that proprietor the obligation of either relinquishing (to the extent at least of indemnifying those whom, by defeating, the intended disposition, he disappoints), the benefit conferred on him by the instrument, if he asserts his own inconsistent proprietary rights, or if he accepts that benefit, of completing the intended disposition by the conveyance in conformity to it of that portion of his property which it purports to affect. The foundation of the doctrine is still the intention of the author of the instrument ; an intention which, extending to the whole disposition, is frustrated by the failure of any part ; and its characteristic, in its application to these cases is, that by equitable arrangement effect is given to a donation of that which is not the property of the donor ; a valid gift, in terms absolute, being qualified by reference to a distinct clause, which, though inoperative as a conveyance, affords authentic evidence of intention. The intention being assumed, the conscience of the donee is affected by the condition (though destitute of legal validity), not express but implied, annexed to the benefit proposed to him. To accept the benefit, while he declines the burden, is to defraud the design of the donor. The doctrine of election, in common with many other doctrines of our courts of equity, appears to be derived from the civil law."

In a note to the first American edition of Coke upon Littleton (Vol. 1, page 525), it is said : " The doctrine of election, in equity, is chiefly applicable to cases where a devisee or

legatee claims under, and also against the will.   There have
been numerous cases on this subject, the result of which
appears to be, that a person shall not claim an interest under
an instrument, without giving full effect to that instrument,
as far as he can.   This rule has been said to be universal and
without exception."

The decisions of the English courts, affecting said rule,
since the publication of the note by Mr. Swanston, have
been very numerous and approve the rule with substantial
unanimity.

Our Court of Chancery, in *Leonard* v. *Crommelin* (1
Edwards' Ch. Rep. 206), says :  " It is an elementary principle,
upon which the doctrine of election is founded, that a person
shall not claim an interest under one instrument (either deed
or will, for it applies to both) without giving full effect to it
as far as he can, and renouncing any right to property which
would defeat the disposition (*Thellusson* v. *Woodford*, 13
Ves. 220), or, to use Lord ROSSLYN's words, as quoted in
*Moore* v. *Butler* (2 Sch. & L. 267), ' no person puts him-
self in a capacity to take under an instrument without per-
forming the conditions of the instrument, and the conditions
may be express or implied.' "

This court, in *Havens* v. *Sackett* (15 N. Y. 365) refers to
the rule as a well-established rule of the courts of equity,
which may be expressed in these terms :  " One who accepts a
benefit under a deed or will must adopt the whole contents of
the instrument, conforming to all its provisions and renouncing
every right inconsistent with it.   For example, if a testator
has affected to dispose of property not his own, and has given
a benefit to the person to whom that property belongs, the
legatee or devisee accepting the benefit so given to him must
make good the testator's attempted disposition.   If he insist
on retaining his own property which the testator has attempted
to give to another person, equity will appropriate the gift
made to him for the purpose of making satisfaction out of it
to the person whom he has disappointed by the assertion of
his rights.   If the parties have done nothing to conclude

themselves, and the court will not consider anything done in ignorance of their rights as binding them, the party whose property has been given to another will be put to his election, either to take what is offered to him in the instrument, yielding up to the party who would otherwise be disappointed, his own property, or to keep what was his own, abandoning the provision made for him in the instrument."

The rule is referred to with approval in *Chipman* v. *Montgomery* (63 N. Y. 221); *Haack* v. *Weicken* (118 N. Y. 67), and in many other cases. It has been approved and stated in the Federal courts (*Peters* v. *Bain*, 133 U. S. 670, 695), and in Arkansas (*Fitzhugh* v. *Hubbard*, 41 Ark. 64); Georgia (*McGinnis* v. *McGinnis*, 1 Ga. 496); Illinois (*Van Schaack* v. *Leonard*, 164 Ill. 602); Indiana (*Moore* v. *Baker*, 4 Ind. App. 115); Kentucky (*Huhlein* v. *Huhlein*, 87 Ky. 247); Maryland (*Hyatt* v. *Vanneck*, 82 Md. 465); Missouri (*Keene* v. *Barnes*, 29 Mo. 377); North Carolina (*Isler* v. *Isler*, 88 N. C. 581); Ohio (*Hibbs* v. *Union Cent. Life Ins. Co.*, 40 Ohio St. 554); Pennsylvania (*Zimmerman* v. *Lebo*, 151 Pa. St. 345); West Virginia (*Bennett* v. *Harper*, 36 W. Va. 546), and other states.

The rule does not rest so much upon presumptions as upon the general principles of right, justice and fair dealing. Its general application and the foundations upon which it rests are stated in Pomeroy's Equity (3rd ed. vol. 1, sec. 461, etc.) and also by most of the other writers on equity.

Equity requires in this case that the plaintiff give effect to the provision of the will giving the Twenty-second street property to her sister, the defendant Stoops, and the judgment in favor of said defendant is right and should be affirmed, with costs.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, HAIGHT, VANN and WILLARD BARTLETT, JJ., concur.

Judgment affirmed.