In the Matter of the Estate of JOHN J. SMITH, Deceased.

Surrogate's Court, Kings County, January 31, 1934.

*Foley & Martin*, for the petitioners.

*Henry C. Turner*, special guardian.

WINGATE, S. Testator's will, which is apparently holographic, after the usual formal clauses reads as follows:

" Second I give devise and bequeath the income from all my personal estate stock, Bonds etc to my wife Julia A. Smith, after disposition funds obtained to be placed in Guaranteed Mortgages.

" Third after expenses are paid a trust fund to be made of my insurance for my children the interest of same to be paid equally

to each one until the youngest is 26 years old the trust to be divided equally.

" This trust fund to be invested as follows

" 80% in Preferred Stocks and Bonds

" 20% to be invested in good common stock

" Fourth: My interest in B. H. Wragge, Inc. which is $\frac{1}{3}$ shall be given to my wife

" I hereby appoint Julia A. Smith my beloved wife and the Corn Exchange bank as executors my wife to qualify without bonds in this or any other state."

Testator was survived by the widow referred to in the will, and by five infant sons, two over, and three under, the age of fourteen years.

As presently enumerated in the account, the net estate totals $51,889.75, consisting entirely of personalty.

It has been made to appear that at the time of testator's death there were outstanding eight policies of insurance on testator's life aggregating approximately $100,000. All were payable to testator's wife, said Julia A. Smith, as named beneficiary. All contained provisions authorizing the insured to change such beneficiary but no act to this end was performed, and apparently the entire avails have been paid to the widow.

In this situation it is the contention of the executors that the entire estate is vested in the widow in absolute ownership and that the children take nothing. With this contention the court cannot agree.

It is unquestionable that a " general gift of the income, arising from personal property, making no mention of the principal, is equivalent to a general gift of the property itself." (*Hatch* v. *Bassett*, 52 N. Y. 359, 362.) This is a well-established rule which has received extremely frequent application since very early times. (*Patterson* v. *Ellis*, 11 Wend. 259, 298; *Locke* v. *Farmers' Loan & Trust Co.*, 140 N. Y. 135, 150; *Matter of Allen*, 111 Misc. 93, 125; affd., 202 App. Div. 810; affd., as to this question, 236 N. Y. 503; *Matter of Goldmark*, 186 App. Div. 447, 451; *Matter of Sackett*, 201 id. 58, 61; *Matter of Harris*, 138 Misc. 287, 289, and authorities cited; *Matter of Billman*, 142 id. 877, 878.) It follows, therefore, under the wording of the " second " and " fourth " items of the will, that testator's personal estate in its entirety, and he possessed nothing else, is absolutely given to the widow by the terms of the will.

It is equally unquestionable, as is so earnestly asserted by the executors, that the proceeds of the insurance policies are the absolute property of the widow. Paradoxical as it may appear, however,

this is precisely the reason why, under the terms of the will, she may not receive both.

The reason lies in the time-honored equitable principle which was lucidly stated by Lord ERSKINE as early as 1806 in *Thellusson* v. *Woodford* (13 Ves. 209, 220) that "A person shall not claim an interest under an instrument without giving full effect to that instrument, as far as he can. If therefore, a testator, intending to dispose of his property, and making all his arrangements under the impression, that he has the power to dispose of all, that is the subject of his will, mixes in his disposition property, that belongs to another person, or property, as to which another person has a right to defeat his disposition, giving to that person an interest by his will, that person shall not be permitted to defeat the disposition, where it is in his power, and yet take under the will. The reason is the implied condition, that he shall not take both; and the consequence follows, that there must be an election; for though the mistake of the testator cannot affect the property of another person, yet that person shall not take the testator's property unless in the manner intended by the testator. * * * without reference to the circumstance, whether the testator had any knowledge of the extent of his power, or not."

This principle is as old as the common law. Indeed, the interesting historical survey respecting its origin, contained in *Beetson* v. *Stoops* (186 N. Y. 456, 460), indicates that it finds its roots in the Institutes of Justinian (Lib. 2, tit. 20, § 4).

However this may be, it took its place in the settled law of this State as early as 1831, Vice-Chancellor McCOUN saying in *Leonard* v. *Crommelin* (1 Edw. Ch. 206, 209): " It is an elementary principle, upon which the doctrine of election is founded, that a person shall not claim an interest under one instrument (either deed or will, for it applies to both) without giving full effect to it as far as he can, and renouncing any right to property which would defeat the disposition."

An early recognition of this principle by the Court of Appeals is found in the leading case of *Havens* v. *Sackett* (15 N. Y. 365), in which Chief Judge DENIO, writing for the unanimous court, states as an established rule of courts of equity that: " One who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it. For example, if a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the legatee or devisee accepting the benefit so given to him, must make good the testator's

attempted disposition. If he insist on retaining his own property which the testator has attempted to give to another person, equity will appropriate the gift made to him for the purpose of making satisfaction out of it to the person whom he has disappointed, by the assertion of his rights. If the parties have done nothing to conclude themselves, and the court will not consider anything done in ignorance of their rights as binding them, the party whose property has been given to another, will be put to his election, either to take what is offered to him in the instrument, yielding up to the party who would otherwise be disappointed, his own property, or to keep what was his own, abandoning the provision made for him in the instrument."

The applications of this rule in New York decisions have been consistent and frequent. From the vast number of such determinations, the following may be selected as representative: *Chipman* v. *Montgomery* (63 N. Y. 221, 235); *Caulfield* v. *Sullivan* (85 id. 153, 158); *Haack* v. *Weicken* (118 id. 67, 75); *Gibbins* v. *Campbell* (148 id. 410, 414); *Beetson* v. *Stoops* (186 id. 456, 462 *et seq.*); *Oliver* v. *Wells* (254 id. 451, 458); *Beal* v. *Miller* (1 Hun, 390, 397); *Matter of Peaslee* (73 id. 113, 114); *Walker* v. *Taylor* (15 App. Div. 452, 457); *Shanley* v. *Shanley* (22 id. 375, 378); *Jurgensen* v. *Dana* (162 id. 42, 44); *Matter of Lyon* (173 id. 473, 476); *Matter of Ballard* (194 id. 106, 109); *De Witt* v. *Jayne* (222 id. 674, 675); *Matter of Aitken* (117 Misc. 268, 272); *Matter of McGrath* (129 id. 514, 516); *Matter of Mahlstedt* (140 id. 245, 254).

*Matter of Ballard (supra)* is of special present interest because of the fact that the testator in that case like the present, attempted to make a testamentary disposition of the proceeds of insurance policies which were payable to another beneficiary under the will.

It follows, in the case at bar, that the widow must elect whether she will surrender the proceeds of the insurance to the testamentary fiduciaries and take under the will in accordance with the expressed desire of the testator, or whether she will retain the insurance proceeds and abandon all rights under the will. In view of all of the facts, the court deems that twenty days is a reasonable allowance of time within which the election should be made. No matter which alternative is selected by the widow, a further checking of the facts by the special guardian will be necessary to determine either that all insurance moneys have been paid over, or that the present account is unobjectionable from the standpoint of his wards. In case any controverted question arises in this process, it may be brought on for hearing by either party on usual notice.

Proceed accordingly.