(43 App. Div. 510.)

## BULLENKAMP v. BULLENKAMP.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. TRUSTS—CONFIDENTIAL RELATIONS—ENFORCEMENT.

In an action by plaintiff against her sister-in-law to enforce a parol agreement to reconvey land which plaintiff had conveyed by warranty deed to defendant, where it appears that plaintiff and her brother, the husband of defendant, who was acting as defendant's agent, were of mature age and dealt on terms of equality, and plaintiff had as clear an understanding of the situation as did her brother, and the circumstances were such that necessity was evidently the inducing cause of the conveyance, and not the influence of the brother, a trust in the property will not be implied in favor of plaintiff on the ground that the conveyance was procured through improper influence resulting from the confidential relations of the parties.

2. JUDGMENTS—CONFORMING TO PLEADING AND EVIDENCE.

Where the theory of the complaint and of the trial, as well as the entire testimony, was that a deed was not intended as a mortgage, but as a conveyance, a judgment based on the theory that the deed was a mortgage cannot be upheld.

Appeal from special term, Kings county.

Action by Mary Bullenkamp against Annie Bullenkamp for a reconveyance of lands. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Alexander S. Bacon, for appellant.
Cromwell G. Macy, for respondent.

HATCH, J. The court found, in accordance with the testimony, that, when the deed of the premises was executed and delivered by the plaintiff to the defendant, the premises had become so incumbered by taxes and assessments that, unless a considerable payment was made thereon, they would be sold. It is quite evident from the testimony in the case that, unless some person was induced to advance money necessary to discharge the pressing demands then existing against the property, the equity of the plaintiff therein would be wiped out. It is further evident that prior to the time when Henry Bullenkamp applied to the defendant, his wife, to advance the money necessary for such purpose, he had acted in connection with this property, if not for himself, as the agent of the plaintiff. Indeed, the evidence is undisputed that he dealt with the property as though it were his own, although the legal title was vested in the plaintiff. The court, however, found that the property was conveyed to the plaintiff for a good consideration, and that she was the owner of the same, and there is evidence in the case to support such finding. We assume, for the purposes of this case, that Henry Bullenkamp acted, in and about procuring the conveyance of title to the property to his wife, as her agent, and that she is bound by his acts. The case was tried upon that theory, and the court has, in effect, so found. The deed from the plaintiff to the defendant is a full-covenant warranty deed, made subject to a certain incumbrance of $6,900 and in-

terest, and also subject to certain restrictions; otherwise, there are no reservations or covenants of any description.

When this case was before us upon a former appeal, we held that if the case, as made, disclosed nothing but the breach of an oral agreement to reconvey, it was such an agreement as courts of equity are not authorized to enforce. Bullenkamp v. Bullenkamp, 34 App. Div. 193, 54 N. Y. Supp. 482. As the court had made no finding that the conveyance was procured through improper influences resulting from the confidential relations existing between the plaintiff and her brother, there was no basis shown for the support of the judgment upon such theory; and as the court had also assumed to adjudicate upon the rights and liabilities which it thought existed between the plaintiff and a person not a party to the record, and having, in effect, decreed a substantial judgment in favor of the latter, we felt constrained to reverse the judgment and order a new trial. The court did not assume in its former decision that the evidence was sufficient to authorize a finding that the confidential relation between the plaintiff and her brother, and the acts of the parties in connection with the conveyance, were sufficient to establish fraud and undue influence, upon which a trust in the property could be implied in favor of the plaintiff. The case evidently presented a basis in the relations of the parties from which such a result might be reached if the acts of the parties were sufficient for such purpose. The former decision therefore did not assume to determine that the mere relation of brother and sister was sufficient upon which to found a trust in the property conveyed in favor of the plaintiff. We are now called upon to examine this question, as the decision of the court, in part, at least, proceeds upon such theory.

The basis upon which equity will raise out of a given situation an implied trust is for the purpose of preventing successful fraud, and in order that a wrong may be redressed; so that not only must there be the relation of trust and confidence existing between the parties, but the acts of the parties claimed to be the moving cause of the improper act must amount to a legal fraud of such a character as equity and good conscience will not tolerate. Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067; Hutchinson v. Hutchinson, 84 Hun, 482, 32 N. Y. Supp. 390. In the latter case the relation was that of brother and sister, but the parties dealt upon terms of perfect equality, and both were competent and capable, and understood the nature of their acts. The conveyance was made upon an agreement to reconvey, and yet the court held that such contract was within the statute of frauds, and was not avoided by the confidential relation, and the plaintiff was denied relief. In the present case the court has found that the confidential relation existed, and, further, that no conveyance would have been made by the plaintiff to the defendant, had she not believed the representations of her brother that the conveyance was only temporary, and that the property would be reconveyed to her. We think that this finding, treated as one determining that the conveyance was procured by improper and controlling influence of the brother acting upon the mind of the sister, is without sufficient evidence to sustain it. It clearly appeared that, without some such

measure as was resorted to, the property would necessarily be lost. This situation was just as well understood by the plaintiff as by her brother; and the conveyance, in this view, was as well understood by the plaintiff to be for the purpose of enabling the brother to obtain the money and preserve the property, as it was by the brother or any other person connected with the transaction. Undoubtedly the plaintiff thought, and perhaps believed, that by reason of taking such steps her brother would be enabled to preserve the property for her by his subsequent handling of the same; and, as this seemed at this time to be the only means by which anything could be saved to any of the parties, the plaintiff consented to such arrangement. Both of these persons were of mature age, and dealt, as the evidence conclusively establishes, upon terms of equality. The plaintiff herself states:

"If he had not been my brother, I would not have transferred it [the property] just the same. He always did what was right towards us. He always did what I wanted him to do,—what was right. I did not have a good deal of influence over my brother, any more than a sister would have. I did what was my duty to do in the house. As they say in the language of the street, what I wanted went. Of course, I didn't ask for anything that was unjust. When I know it, I know it. Nobody can convince me a thing is wrong that I think is right. I try to know it is right before I think. I can't consider myself strong, whatever. I am strong mentally and spiritually."

It is quite evident from all the testimony that in dealing with this property the plaintiff had as clear an understanding of the situation as did the defendant or her brother. The defendant had advanced considerable sums of money already, which had been expended for the benefit of the property by the brother, who exercised control over and management of the same, received whatever was derived from it, and dealt with the property in all respects as his own. When it came to the conveyance, it is clear that the plaintiff had full understanding, equal with the brother, of the effect of her act; and the circumstances were such that necessity was evidently the inducing cause, and not the influence of the brother. If, in this regard, we assume the allegations of the complaint to be true, the brother was at this time insane,—suffering from paresis or dementia,—and had delusions. If such were the circumstances, although the court finds against it, the mental capacity to comprehend the nature and consequences of an act was clearly on the side of the sister. The only fraud that can be legally predicated of this transaction is the breach of the oral agreement to reconvey. Such condition is clearly insufficient to entitle the plaintiff to relief, within all of the authorities.

Nor can this judgment be upheld, based upon the consideration that the deed was a mortgage. Such is not at all the theory of the complaint, nor of the trial. There were scarcely any of the elements of a mortgage in the transaction. There was no specified amount which a mortgage could represent, and there was never any agreement or understanding to repay any sum. There is not a particle of proof that the plaintiff ever understood or agreed, as a condition of reconveyance, that she should pay anything. Besides, the entire testimony, without dispute, is that it was not intended as a mortgage, but as a conveyance. The theory of the complaint is the same. The only mention of a mortgage made therein was that the

conveyance of the property was to be had to enable somebody else to execute a mortgage thereon, and the testimony in this regard corresponds with the allegation. In addition to this, the two theories are not entirely consistent, as it cannot be treated as a mortgage, and become security for money to be repaid, and also exist as a deed improperly obtained.

In neither aspect do we think that the judgment can be upheld. It should therefore be reversed, and a new trial granted.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.