(81 Misc. Rep. 431.)

## JURGENSON v. DANA et al.

(Supreme Court, Special Term, Suffolk County. July, 1913.)

1. DEEDS (§ 196\*)—CONVEYANCE BY CHILD TO PARENT.

Where a deed by child to parent is constructively fraudulent, the burden is on the person claiming under it to show affirmatively that no deception was practiced and no undue influence used, but that all was fair, open, voluntary, and well understood.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593, 649; Dec. Dig. § 196.\*]

2. DEEDS (§ 72\*)—DEED BY CHILD TO PARENT—FRAUD.

To avoid a deed by a child to his parent, the acts of the parties claimed to be the moving cause of the conveyance must amount to a legal fraud of such character as equity and good conscience would not tolerate.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 190–199; Dec. Dig. § 72.\*]

3. DEEDS (§ 72\*)—CONVEYANCE BY CHILD TO PARENT—VALIDITY.

A conveyance by a child to his parent may be a proper family arrangement and for the best interest of the child; but if no such considerations are found, and the conveyance has been wrongfully obtained from the child, it will be set aside in equity or the parent converted into a trustee.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 190–199; Dec. Dig. § 72.\*]

4. DEEDS (§ 211\*)—CONVEYANCE TO PARENT—VALIDITY.

Where a deed by a child to his adopting parent recited that the grantor knew that his deceased adopting mother had intended to will all her property to such father, and, no such will having been found, the grantor executed the deed of his interest in certain real estate of which his mother died seised and there was no evidence of fraud, such recitals indicated that the deed was executed under proper influences.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.\*]

5. WILLS (§ 781\*)—DEVISE—ELECTION.

Where testator, having an interest in certain real estate less than fee, a part of the property being owned by a devisee under this will, attempted to devise the entire fee in the property, the devisee owning such interest

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was bound to elect whether he would claim the same or accept the devise in the will, but could not have both.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2013–2017; Dec. Dig. § 781.*]

Partition by Kathryn Floyd Dana Jurgenson, an infant, by Edward J. Lynch, her guardian ad litem, against Richard Floyd Dana and others. Complaint dismissed on the merits as to plaintiff, and defendant, Richard Floyd Dana required to elect within sixty days whether he will accept the benefits of the will of William B. Dana, deceased, or will take his interest in the property described in the complaint.

George R. Bristor, of New York City, for plaintiff.

Joseph W. Bristor, of New York City, for defendant, Richard Floyd Dana.

Winthrop E. Dwight, of New York City (Percy L. Housel, of Riverhead, of counsel), for defendants Shepherd, Seibert & Dana.

Henry M. Brigham, of New York City, guardian ad litem for infant defendant, William Shepherd Dana.

JAYCOX, J. The plaintiff seeks in this action to have the premises described in the complaint divided among the owners thereof, or, if such division cannot be made, that the same be sold and the proceeds thereof divided, and alleged that the plaintiff is seised of an undivided one-third part thereof, that the defendant Richard Floyd Dana is seised of an undivided one-third part thereof, and that the defendant Ethel Dana Shepherd is seised of an undivided one-third part thereof, subject to certain rights of dower and inchoate rights of dower.

Kathryn Floyd Dana was seised of these premises in her lifetime, and died so seised of them on the 6th day of April, 1886. She left her surviving her husband, William B. Dana, and adopted children hereinafter mentioned. She left a last will and testament dated August 4, 1875, duly admitted to probate by the surrogate of Suffolk county July 26, 1886, in and by which she disposed of the premises in manner following:

"First. I appoint my husband William B. Dana my sole executor authorizing and empowering him to sell and convey by deed or otherwise all or any portion of the property real and person of which I may die possessed and reinvest the proceeds of such sale as he may deem best.

"Second. All of the said property I give to my said husband to hold and enjoy during his life and to use the entire income therefrom for his own purposes.

"Third. After the death of my said husband I give and bequeath to our adopted children John Kirkland Dana, Ethel Floyd Dana and Richard Floyd Dana all my estate then remaining and all the increase thereof, share and share alike to have and to hold forever for their own proper use and enjoyment."

At the time of the death of Mrs. Dana, John Kirkland Dana, the father of the plaintiff, together with Richard Floyd Dana and Ethel Floyd Dana, lived in the home of William B. and Kathryn Floyd Dana and were treated as their children and members of the family.

John Kirkland Dana died in Tacoma, Wash., in 1903. The plaintiff is his only child.

It is conceded that the defendant Ethel Dana Shepherd owns at least one-third of the property, and the only controversy is as to the other two-thirds, Ethel Dana Shepherd claiming to own the whole of the property, and the plaintiff, Kathryn Floyd Dana Jurgenson, and the defendant Richard Floyd Dana each claiming to be the owner of one-third of said property, and it is as to these claims that this action is contested. Much that has been discussed in the briefs herein I consider it unnecessary to discuss, as I shall place my decision upon other grounds.

On the 22d of April, 1886, John Kirkland Dana, one of the remaindermen in the forgeoing will, executed and delivered to William B. Dana a deed dated on that date, conveying to said William B. Dana all the right, title, and interest which the said John Kirkland Dana then had or might thereafter acquire, under the said will of Kathryn Floyd Dana, or under any other will of hers which might thereafter be found, in and to the premises affected by this action. The consideration and premises were therein recited as follows:

"Whereas Katharine Floyd Dana, before her death and during the past winter did state and declare more than once in my presence that she had already willed whatever property she possessed to her husband William B. Dana and did also in my presence state and declare that she did then and there give and transfer to him the said William B. Dana, all her property real and personal of every kind and nature whatsoever. And whereas no will of the said Katharine Floyd Dana has been as yet found except a certain will purporting to be signed by her, dated August 4, 1875, by which she gives her said husband power to sell and convey all her property, real and personal and gives him all the said property, to hold and enjoy during his life and to use the entire income thereof for his own purposes and after the death of her said husband gives and bequeathes to me, together with Ethel Floyd Dana and Richard Floyd Dana, all her estate then remaining and all the increase thereof, share and share alike. And whereas, I know as aforesaid that the said will does not express the desire of the said Katharine Floyd Dana. Now therefore, I, the said party of the first part, desiring that her wishes shall in all respects be carried out, for and in consideration of the premises and of the sum of One dollar to me in hand paid, the receipt whereof is hereby acknowledged," etc.

At the same time Ethel Floyd Dana, now the defendant Ethel Dana Shepherd, executed a similar deed to William B. Dana, conveying in a similar manner all her interest in the premises and reciting the same premises and consideration for the deed as the last preceding deed.

If the deed made by John Kirkland Dana above recited, to William B. Dana, is valid, then the plaintiff herein has no interest in, or title to, the premises. This deed expresses an ample and sufficient consideration, and the recitals of the inducement for the transaction therein contained are binding upon the plaintiff and the defendant Caldwell, who are privies to the grantor, John Kirkland Dana. Van Winkle v. Van Winkle, 95 App. Div. 605, 89 N. Y. Supp. 26, affirmed 184 N. Y. 193, 77 N. E. 33.

[1] This deed is attacked only upon the ground of constructive fraud. If it be conceded that the deed is constructively fraudulent, the burden of proof is shifted, and the transaction is presumed void. It is then incumbent upon the defendant claiming under such deed to

show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood.  Cowee v. Cornell, 75 N. Y. 91–101, 31 Am. Rep. 428.

[2] There has been no fact proven in any way tending to contradict the entire bona fides of the transaction, and, if credit is to be given to the recital of the deed itself, no fraud of any character was practiced upon the grantor.  To avoid a deed of this character the acts of the parties claimed to be the moving cause of the improper act must amount to a legal fraud of such a character as equity and good conscience will not tolerate.  Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067; Hutchinson v. Hutchinson, 84 Hun, 482, 32 N. Y. Supp. 390; Bullenkamp v. Bullenkamp, 43 App. Div. 510, 60 N. Y. Supp. 84.

[3] In Perry on Trusts, subd. 201, p. 255, it is said:

"In the same manner courts of equity carefully scrutinize contracts between parents and children by which the property of children is conveyed to parents.  The position and influence of a parent over a child are so controlling that the transaction should be carefully examined, and sales by a child to a parent must appear to be fair and reasonable.  Such contracts are not, however, prima facie void, but there must be some affirmative proof of undue influence or other improper conduct to render the transaction void; for while the parent holds a powerful influence over the child, the law recognizes it as a rightful and proper influence, and does not presume, in the first instance, that a parent would make use of his authority and parental power to coerce, deceive, or defraud the child.  Therefore it is always necessary to prove some improper and undue influence in order to set aside contracts between parents and children.  As purchases by a parent in the name of a child do not create a resulting trust but are presumed, in the first instance, to be the advances made by the parent to the child, so conveyances to the parent by the child may be a proper family arrangement, and for the best interest of the child.  If no such considerations can be found in the case, and the conveyance, after all allowances are made, is found to have been wrongfully obtained from the child, a court of equity will set it aside or convert the parent into a trustee.  But the proceedings must be had at once.  The child cannot wait until the parent's death, or until the rights of other parties have intervened.  The same rules apply when contracts are made between children and those who have put themselves in loco parentis; and so when family relatives make use of their position and influence to obtain undue and improper advantages, as where two brothers obtained a deed from a sister, it was set aside."

In Ten Eyck v. Whitbeck, 156 N. Y. 341, at page 353, 50 N. E. 963, at page 967, it is said:

"Where the relation between the parties is that of parent and child, principal and agent, or where one party is situated so as to exercise a controlling influence over the will and conduct of another, transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood and that there was no fraud, mistake, or undue influence."

[4] Applying that rule to this case, the only evidence we have is obtained from the recital of the deed itself, and that certainly shows that no fraud or deception was practiced upon the grantor.  It shows that he was acquainted with the fact that a will had been made in which he was named as remainderman of one-third of the estate disposed of by said will.  It also shows that the grantor was aware that testatrix had changed her designs as to the disposition of her property and desired that her husband should have the whole of her es-

tate, and this young man very properly desired to see the will and desires of his foster mother carried out, and for that purpose, with full knowledge of the facts, he made a conveyance to his father. Under these circumstances I can see no reason for holding this deed fraudulent or void.

The other adopted child of Kathryn Floyd Dana and William B. Dana, who is the defendant Richard Floyd Dana in this action, made no conveyance to his father William B. Dana.

During his lifetime, and very soon after the decease of his wife, William B. Dana made a conveyance of all the property involved in this action to the defendant Joseph P. Kirlin, and Kirlin thereupon reconveyed the same to said William B. Dana. William B. Dana occupied the premises in question from the death of Kathryn Floyd Dana to the date of his own death in 1910. During his lifetime the said William B. Dana became seised in fee simple of certain lands in the state of California, which at the time of his death were of the value of $16,000. He left a last will and testament dated April 12, 1909, and a codicil thereto dated September 13, 1910, both of which were duly admitted to probate by the surrogate of Suffolk county. Said will of William B. Dana contained the following provision:

"Seventh. I give and devise to Richard Floyd Dana and Hazel B. Dana, his wife, of the city and county of Riverside, in the state of California, my lots numbered 5, 6, 11, and 14 in block numbered 13 of the lands of the Riverside Land and Irrigating Company, as surveyed by C. C. Miller, according to the plat of such survey in the recorder's office in the county of Bernardina or elsewhere in the state of California, and also all other lands which I may own at my death in said Riverside county, and also my household furniture and other personal effects on any of my said lands in said Riverside county, California, to have and to hold the same during their lives with remainder to the survivor of them."

By the tenth paragraph of his will he gave and bequeathed to the defendant Richard Floyd Dana $2,500 and to his wife, the defendant Hazel B. Dana, $2,500. By the codicil of said will William B. Dana disposed of the lands described in the complaint as follows:

"I give, devise and bequeath all that certain tract of land with the appurtenances known as 'Moss Lots' consisting of about twenty acres, situated at Mastic, on Long Island, in the state of New York and all my household furniture, horses, carriages, harnesses, boats, books, pictures and silverware thereon, and all my household furniture, books, pictures and silverware, carriages and harnesses, which are in my house or barn at my estate known as Greycliff, in Englewood, New Jersey or which are in storage, to Ethel Dana Shepherd, to have and to hold the same during her life and after her death I give, devise and bequeath the same unto my adopted son William Shepherd Dana, or if he be not living, to his issue, or if said William Shepherd Dana shall die without issue prior to the death of Ethel Dana Shepherd, I give, devise and bequeath the same to Ethel Dana Shepherd absolutely."

The question involved in this action is whether the defendants Richard Floyd Dana and Hazel B. Dana, his wife, are required to elect between the share which Richard Floyd Dana owns in the premises described in the complaint and the inchoate right of dower therein of the defendant Hazel B. Dana, and the provisions made for them in the will of said William B. Dana.

· [5] As to the doctrine of election there is but very little controversy between the parties in this action. It is only as to whether it is applicable to the situation disclosed in this action. The rule in equity is set forth in Beetson v. Stoops, 186 N. Y. 456, at page 459, 79 N. E. 731 (9 Ann. Cas. 953) as follows:

"Where a testator assumes by his will to devise property owned by him, and also other property not owned by him, that the person to whom is devised the property owned by such testator cannot accept such devise, with knowledge of all the facts, without being precluded from asserting a claim to other property devised by the same instrument."

All the facts necessary for the application of this rule are clearly established in this case. The only question that seems to be open to controversy is as to whether the fact that the testator William B. Dana concededly had some interest in the premises involved in this action will prevent the application of the rule. The situation which calls for. the application of this rule is set forth in Havens v. Sackett, 15 N. Y. 365, as follows:

"It is indeed laid down that, in order to furnish a case for compelling an election, it must appear clearly and certainly that the interest attempted to be disposed of was such as the testator did not own."

And again at page 373 of 15 N. Y.:

"It must be clear beyond all reasonable doubt that he has intentionally assumed to dispose of the property of the beneficiary, who is required, on that account, to give up his own gift."

Applying that rule, which certainly is as strong as the defendant Richard Floyd Dana can claim to be, it seems to me that a case for the application of the doctrine of election is clearly made out. The testator in clear and unmistakable terms disposed of the entire property. The language of his gift cannot be satisfied with anything less than the entire fee of the property described. That being so, the defendant Dana cannot lessen the gift to Ethel Dana Shepherd by claiming his share of this property and at the same time accepting the benefits conferred upon him by the will.

The complaint should be dismissed upon the merits as to the plaintiff.

The defendant Richard Floyd Dana should elect within 60 days whether he will accept the benefits conferred upon him by the will of William B. Dana, or will take his interest in the property described in the complaint herein.

Let the decree herein be settled upon two days' notice.