## GIBSON v. GIBSON.

(Court of Appeals of District of Columbia. Submitted February 16, 1923. Decided June 4, 1923. Rehearing Denied October 6, 1923.)

No. 3878.

1. **Wills ⬳470—Intent determined from whole instrument.**

Testator's intent is determined from the terms used, taking the whole will together.

2. **Wills ⬳783—Testamentary provision in lieu of curtesy.**

Where a will made substantial provisions in favor of a surviving husband, and showed that testatrix intended to dispose of her entire estate, *held*, that the testamentary provisions were intended in lieu of curtesy in realty outside of the District of Columbia.

3. **Wills ⬳781—Under New Jersey law, husband and wife required to elect.**

The rule in New Jersey does not differ from the general rule that, while a husband by express provision may not deprive a wife of her dower, or a wife deprive her husband of his curtesy rights, if either makes substantial provision for the other in terms clearly indicating that this provision is intended to be in lieu of dower or curtesy, the other may not take both, but is put to an election.

4. **Wills ⬳783—Husband must elect between testamentary provision and curtesy in New Jersey lands.**

Where a will disposed of all testatrix's property, the surviving husband must elect between testamentary provisions in his favor and the right of curtesy in New Jersey lands under a New Jersey law.

5. **Wills ⬳794—Election by accepting benefits.**

One accepting benefits under a testamentary provision is barred from asserting title to any other property disposed of by the will.

6. **Executors and administrators ⬳495(2)—Commission as executor and as guardian double commission.**

An allowance to the same individual of a commission as executor of 8 per cent. on a personal estate of more than $78,000, and a commission as guardian of 5 per cent. on $21,429.76, which came from the first fund, amounts to a double commission, requiring an adjustment.

Smyth, Chief Justice, dissenting.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

Proceeding between Beatrice A. Gibson, infant, by George C. Gertman, guardian ad litem, and Robert Gibson, trustee under the last will and testament of Flora A. Gibson, deceased. From the decree rendered, the guardian ad litem appeals. Reversed and remanded.

George C. Gertman, of Washington, D. C., for appellant.

W. C. Sullivan and M. M. Doyle, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal by a guardian ad litem from a decree in the Supreme Court of the District awarding the father of the infant curtesy in real estate in New Jersey; the question presented being whether, under the will of the wife and mother, the appellee husband was put to an election between such curtesy right and the testamentary provisions in his favor.

On May 15, 1919, Flora A. Gibson died in this District, where she was domiciled, leaving a husband, Robert Gibson, appellee here, and one child, Beatrice A. Gibson, then nine days old. Her estate consisted of personalty of the value of about $76,000, a home in this District of the value of $20,000, real estate in New Jersey known as the Kampfe's Lake property and of the value of about $75,000, and real estate in New York of the value of about $45,000.

The Gibsons were married August 15, 1917, when Mr. Gibson was 48 years of age, and the will before us was executed by the wife on March 7, 1918; a codicil being added on the same day. The material provisions of the will are as follows:

In the introductory clause the testatrix described herself as of Washington, D. C., and stated that it was her intent "to dispose of all my property of whatsoever kind and nature upon my [her] death." In the first clause she directed payment of her funeral expenses and just debts, and in the sceond provided a fund for the Greenwood Cemetery, Brooklyn, N. Y., the income to be used as directed. The third, fourth, and fifth clauses contained small bequests to servants, and are not material here. The sixth, seventh, and eighth clauses read as follows:

"Sixth. In the event that I shall leave me surviving any issue, it is my will and I do hereby give, devise and bequeath unto my trustee hereinafter named, thirty thousand ($30,000) dollars and also my home at 2309 Calvert street, Washington, D. C., together with all its contents and appurtenances, in trust nevertheless to invest and keep the same invested and to receive the rents, issues, income and profits therefrom and after defraying all lawful charges upon the same, to pay the net income thereof to the use of my husband, Robert Gibson, during his life and upon his death I direct my trustee to give and convey the moneys and property or the proceeds thereof, mentioned and described in this paragraph, to my lawful issue to be divided among them equally, share and share alike."

"Seventh. In the event that I shall leave me surviving any issue, it is my will and I do hereby give, devise and bequeath unto my said issue, to be divided among them equally, share and share alike, all the rest, residue and remainder of my estate, as well real as personal and wheresoever the same may be situated."

"Eighth. In the event that I shall not leave me surviving any issue, then and in such event, it is my will and I do hereby make the bequests mentioned and described in paragraphs 'first,' 'second,' 'third,' 'fourth,' and 'fifth' of this, my last will and testament, and in such event it is my will and I do hereby revoke and cancel the provisions contained in paragraphs 'sixth' and 'seventh' of this my last will and testament and it is my will and I do hereby make the following bequests and devises."

In the ninth and tenth clauses testatrix made bequests of specific articles of personal property in the contingency that she died without issue. In the eleventh clause, in the same contingency, she devised her "property at Greenlawn, Long Island, known as the Townsend farm, or the proceeds thereof, in the event that my executor hereinafter named shall have sold and disposed of the same," to certain cousins and other relatives. In the twelfth clause, in the same contingency, she devised all her real estate in the counties of Kings and Queens, New York, to certain other cousins. The thirteenth and fourteenth clauses, which were to take effect only in the event testatrix died without issue, read as follows:

"Thirteenth. All of my property, as well real as personal, situated in the city of Washington, District of Columbia, and also all stocks, bonds, cash on hand or in bank, wheresoever the same may be situated, and not mentioned or referred to in any other paragraph of this my will. I give, devise and bequeath to my trustee hereinafter named, in trust nevertheless to invest the same and to keep the same invested and to receive the rents, issues, incomes and profits therefrom and after defraying all taxes and all other charges upon the same, to pay the net income to the use of my husband, Robert Gibson, during his life. Upon the death of my said husband, Robert Gibson, I direct my trustee to give one-fourth of all my said property referred to in this paragraph of this my will, to Bessie Conlon and Margaret Gibson, to be divided between them equally, share and share alike, and the remaining three-fourths thereof shall be divided equally, share and share alike, among my uncle, George Gottschall, my aunt, Maria Gottschall, my cousins, Margaretha Gottschall, Hannah Gottschall and Katie Gottschall, all of Dresden, Germany."

"Fourteenth. My property at Boomingdale, New Jersey, known as Kampfe's Lake property, with all of its appurtenances, I give, devise and bequeath to my trustee hereinafter named in trust nevertheless to keep the same to the use of any corporation, institution or society which shall be incorporated for and operated exclusively as a free home or hospital for poor, ill, convalescing or homeless children, which shall be selected or designated by my executors hereinafter named. It being my wish that in the event that for any reason the corporation, institution or society selected or designated by my said executors shall cease to exist or shall be unable to continue its work and shall be unable to continue the upkeep of my said property, then and in such event my executors hereinafter named may select any other corporation, institution or association for the same purposes."

The fifteenth clause specified the fund from which the bequests named in the second, third, fourth, and fifth clauses of her will were to be derived, any surplus being bequeathed to her trustee thereinafter named to invest and "pay the net income thereof to the use of the corporation, institution or society selected or designated by my executors hereinafter named in compliance with the provisions of paragraph 'fourteenth' of this my will."

The sixteenth clause sheds no light upon the question before us. The seventeenth clause reads as follows:

"Seventeenth. I hereby authorize and empower my executors and trustee, or the survivor or survivors, successor or successors or the one, or those, thereof, who shall qualify and shall be executor and trustee or executors and trustees for the time being, of this my last will and testament, if in his or their discretion, it shall seem expedient to retain any property in the same form of investment in which it may be at the time of my death, any law to the contrary notwithstanding."

In the eighteenth clause testatrix named her husband as executor and trustee, and authorized him, or his survivor or successor, in his or her discretion, to sell at public or private sale the whole or any part of the real estate of which she might die seized or possessed of any interest therein, and "to execute and deliver any and all conveyances, deeds or other instruments that may be necessary or proper to transfer said property or to carry out the intention of this provision." The nineteenth clause reads as follows:

"Nineteenth. I declare this my will and every part thereof is made with reference to the present existing laws and statutes of the state of New York and without regard to the laws and regulations of any state or country where I may happen to be at the time of my decease and where any portion of my estate may be situated."

The codicil sheds no light upon the questions at issue here.

Mr. Gibson procured the probate of the will in this District and entered upon his duties as executor and trustee under the will. On September 14, 1921, he filed his "original bill for statement of trustee's account," reciting that he brought it "as trustee under the last will and testament of Flora A. Gibson." The bill further recites the fact of the will, the issuance of letters testamentary to the petitioner, and that he had "duly filed his first and final account as executor which has been approved and passed by the court;" that a reference to the will will show that he is named therein as executor and trustee, with certain specified powers; that the estate which came to him "as such trustee consists in part of personalty, but principally of real estate, situate in the states of New Jersey and New York, including valuable tracts of land near Bloomingdale, in the state of New Jersey," etc.; that, "acting under the authority in him vested by the provisions of the said eighteenth paragraph of the will," he had sold and conveyed the house in Brooklyn "and the estate near Bloomingdale;" that, inasmuch as he "has been engaged in the administration of his said trust for more than two years last past without having rendered any account of his trusteeship, and * * * especially in view of the fact that he was until the sale of the said estate at Bloomingdale a tenant by the curtesy thereof and was entitled to commutation of his said curtesy rights out of the proceeds of such sale and has received the same in accordance with the laws and practices of the state of New Jersey where the said estate is situated," he prays "that his accounts as trustee from the beginning of his trusteeship until the time of the statement thereof should be taken," and that the cause be retained for approval of such further accounts as he or any other trustee might have occasion to submit during the existence of the trust.

On the same day George C. Gertman, Esq., appellant here, was appointed guardian ad litem, and on the 21st of September following he filed his answer to the foregoing bill, together with his report as

guardian ad litem. In this answer he averred that the testatrix had by her will disposed of her entire estate, and that no part of it was derived from her husband; that the provisions she had made for her husband were in lieu of curtesy; that in a "petition for instructions," filed by Mr. Gibson as executor and trustee on April 23, 1920, he stated that "the entire estate of the testatrix passes by her will to the daughter of your petitioner and the said testatrix, Beatrice A. Gibson, who is now but 11 months old, except only as to the trust fund created by the said will in favor of your petitioner, the husband of the testatrix;" that in his final account in the administration proceeding there was claimed by Mr. Gibson, and transferred to him under the sixth clause of the will, the sum of $30,000 and the contents of the residence; that on August 16, 1920, Mr. Gibson had been appointed guardian of the estate of his daughter, and on November 24, 1920, he had filed an inventory of the real and personal estate of his ward as follows:

"Beneficial right in real estate at Bloomingdale, New Jersey, value $75,000.-00; income, none.

"Beneficial interest in real estate at Huntington, Long Island, New York, value $38,000.00; income, none.

"Beneficial interest in real estate in Brooklyn, New York, value $4,150.00; income, none.

"Beneficial interest in real estate in the District of Columbia, subject to life estate, value $20,000.00; income, none."

The answer of the guardian ad litem further averred that at no time, either in administration or guardianship proceedings, had Mr. Gibson intimated that he would assert any claim to curtesy in any of the estate, "but, to the contrary, he has always recognized the provision for him made by the testatrix as his sole interest in the estate." The contention is then made by the guardian ad litem that Mr. Gibson, as trustee, "should be required to account for any curtesy claimed and held by him."

To this answer Mr. Gibson filed a paper, entitled a "reply," in which he admitted, inter alia, that his wife by her will "disposed of her entire estate, that is to say, all that she owned," but averred that she could not dispose of the estate by the curtesy in her New Jersey lands, which devolved upon him by operation of law; that he had submitted the question to a New Jersey attorney, who had advised him that he was entitled to claim this New Jersey interest; and that he never had intended to make an election. Certain other averments as to fees will be referred to later.

[1] Our first inquiry naturally is as to the real intent of the testatrix, and the universal rule is that such intent is to be determined from the terms used, "taking the whole will together." Young Women's Christian Home v. French, 187 U. S. 401, 417, 23 Sup. Ct. 184, 47 L. Ed. 233; Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138; Hardenbergh v. Ray, 151 U. S. 112, 14 Sup. Ct. 305, 38 L. Ed. 93; Montgomery v. Brown, 25 App. D. C. 490; Brown v. Wells, 45 App. D. C. 428; Presbrey v. Simpson, —— App. D. C. ——, 290 Fed. 333. Present Term; Roberts v. Stevens, 84 Me. 325, 24 Atl. 873, 17 L. R. A. 266; Van Dyke's Appeal, 60 Pa. 481; Waggoner v. Waggoner, 111 Va. 325, 68 S. E. 990, 30 L. R. A. (N. S.) 644.

[2] It is plainly apparent, as in effect conceded by counsel for Mr. Gibson, that the testatrix intended to dispose of her entire estate. She says so in the introductory clause of her will, where she uses language capable of no other interpretation. In the sixth clause she makes provision for her husband, in the contingency that she shall leave issue. In this clause he is given a life interest in $30,000, and the net income from her furnished house in the District of Columbia. Under the seventh clause of her will, all the rest, residue, and remainder of her estate, "as well real as personal and wheresoever the same may be situated," is devised and bequeathed to her issue. All the real estate of which she might die seized was brought within the scope of this clause, so that the narrow question remaining is as to the intent of the testatrix with reference to her husband's curtesy rights in her real estate outside the District of Columbia; that is, whether the provisions made for him in the will were intended to be in lieu of the interest to which he would have been entitled, but for the will.

Again invoking the universal rule, we turn to the will itself for the solution of this question, and there we find the disposition which the testatrix made of her estate upon her death either with or without issue. If without issue, she disposed of the Townsend farm on Long Island and all real estate in the counties of Kings and Queens in New York to certain relatives, provided a trust fund for her husband somewhat in excess of that provided for him in the event she died with issue, and then, in the fourteenth clause of her will, devised and bequeathed the Kampfe's Lake property, at Bloomingdale, New Jersey, to her trustee, "in trust nevertheless to keep the same to the use of any corporation, institution or society which shall be incorporated for and operated exclusively as a free home or hospital for poor, ill, convalescing or homeless children, which shall be selected or designated by my executors hereinafter named." Reading this will as a whole, we think the conclusion irresistible that the provision made by the testatrix for her husband was intended to measure his entire beneficial interest in her estate. There was even greater reason for recognizing his curtesy interest in her estate outside the District of Columbia, in the event she died without issue; yet in her disposition of that property to others the testatrix clearly indicated that she did not recognize such interest. Dying without issue, it was her will that this New Jersey estate and all the estate should be set apart and used "as a free home or hospital for poor, ill, convalescing or homeless children." This provision, in our view, negatives the idea that the testatrix contemplated that her husband, through the assertion of his curtesy rights, would absorb substantially one-half of this estate, or defer its enjoyment until his death. This is so plain that we forbear further discussion. To say that the testatrix, having made provision for her husband in the event of her death without issue, in lieu of his curtesy interest in this property, intended her provision for him in the event of her death with issue to be in addition to his curtesy interest, not only would be unreasonable, but would necessitate the rewriting of her will. Her intention in the one contingency is as plain as in the other.

[3] The learned counsel for Mr. Gibson earnestly insists, however, that under the law of New Jersey, which he contends is controlling here,

curtesy rights are absolute and can not be affected by will. While we do not regard this question as material, for reasons that will appear presently, we are unable to accept counsel's view. An examination of the decisions of the New Jersey courts discloses, we think, that the rule in that state does not differ from the general rule, namely, that while a husband by express provision may not deprive his wife of her dower rights, or a wife deprive her husband of his curtesy rights, if either makes substantial provision for the other in such terms as clearly to indicate that such provision is intended to be in lieu of dower or curtesy, the other may not take both, but is put to an election. Moore v. Moore, 84 N. J. Eq. 39, 92 Atl. 948, affirmed in 85 N. J. Eq. 150, 95 Atl. 983; Hattersley v. Bissett, 50 N. J. Eq. 577, 25 Atl. 332, affirmed in 51 N. J. Eq. 597, 29 Atl. 187, 40 Am. St. Rep. 532; Kerrigan v. Conelly (N. J. Ch. 1900) 46 Atl. 227.

[4, 5] As just intimated, however, this consideration is unimportant, for the reason that no statute of New Jersey, in a situation like the present, will control the conscience of a court of equity in this District. Mr. Gibson, as trustee and beneficiary, is seeking the aid of a court of equity in this jurisdiction in the interpretation of a will in which bequests were made to him, in lieu of his curtesy interest, of property within this jurisdiction. In this District he who takes the benefit under a will of a provision in his favor is barred from asserting title to any other property disposed of by the will. Utermehle v. Norment, 197 U. S. 40, 57, 25 Sup. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520. In that case the court cited with approval Fry v. Morrison, 159 Ill. 244, 42 N. E. 774, where it was held that one who took a beneficial interest under a will was thereby estopped to set up any right or claim of his own, though otherwise well founded, which would bar or defeat the effect of any part of the will. See, also, Smithsonian Institution v. Meech, 169 U. S. 398, 18 Sup. Ct. 396, 42 L. Ed. 793; Beetson v. Stoops, 186 N. Y. 456, 79 N. E. 731, 9 Ann. Cas. 953; Moseley v. Bogy, 272 Mo. 319, 198 S. W. 847. In Van Dyke's Appeal, 60 Pa. 481, a testator gave legacies to his daughters which absorbed the bulk of his estate in Pennsylvania, and by the same will gave his real estate in New Jersey to his sons. The will, however, was not so executed as to pass real estate in New Jersey. In a proceeding to compel the daughters to elect, the court held that, in construing a bequest of personalty within its jurisdiction, a court of Pennsylvania might read the whole will, though invalid as to land in another state, and that, having jurisdiction, its decree would be conclusive upon the daughters in the settlement of the account of the executors. The court further found that election being grounded on the intention of the testator, resort might be had to all parts of the will to ascertain it, and that so reading the will a case of election was presented. The reasoning of the court in Van Dyke's Appeal is applicable here. Mr. Gibson in effect says:

"If, under the law of the District of Columbia, I may take the benefit of the provisions of the will in my favor, and in addition my curtesy rights in the New Jersey property, I desire to do so."

Finding that it was the intention of the testatrix that the provisions of the will should measure his entire beneficial interest in her estate,

it is plain that a court of equity ought not to permit him to accept these provisions and retain his curtesy rights. In other words, this is a case of election. The husband earnestly insists, however, that he has not made an election, and counsel representing his child does not insist that he has. While there is evidence to the contrary, we are not disposed· in the circumstances to withhold permission for him now to elect. But, should he elect to waive the provisions of the will, it would be incumbent upon him to account for the reasonable value of the use of the house and furnishings set apart for him under that will. In this jurisdiction, a wife may destroy her husband's curtesy by conveyance or devise. Code, § 1159; Balster v. Cadick, 29 App. D. C. 405. The testatrix devised the real estate in this District to her daughter, and the provision in favor of her husband was plainly intended to be effective only in the event of his acceptance of that and the other provision for his benefit. In the event of a waiver, Mrs. Gibson died testate as to this piece of property, and the husband would take no interest therein.

[6] Mr. Gibson, as executor, was allowed a commission of 8 per cent. on personal estate of more than $78,000. He was appointed guardian, and soon thereafter was allowed a commission of 5 per cent. on $21,-429.76, which came from the fund upon which he already had received a commission as executor. In our view, this amounted to a double commission, and the matter should be adjusted when the cause again is before the lower court.

The decree must be reversed, with costs, and the cause remanded for further proceedings in harmony with this opinion.

Reversed and remanded.

Mr. Chief Justice SMYTH dissents.