**WALKER v. THOMAS et al.**

No. 6073.

United States Court of Appeals for the District of Columbia.

Argued Nov. 5, 1934.

Decided Feb. 4, 1935.

MARTIN, Chief Justice, and ROBB, Associate Justice, dissenting.

William J. Neale, of Washington, D. C., for appellant.

Frank F. Nesbit and Stanton C. Peelle, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant is the son of Admiral John G. Walker, who died in 1907, and whose will was admitted to probate in the District of Columbia. While no appraisal is included in the record, we assume from the amounts which the children severally received that the value of the estate was in excess of half a million dollars. Admiral Walker left surviving him his widow and five children, and in his will provided that $120,000 should be placed in trust for the four children other than appellant, and that the widow, to whom the balance of the estate was left for life, should pay to appellant during his lifetime an amount annually which should equal the income which each of the other children received by reason of the establishment of the trust. After the death of his wife, he provided for proportionate distribution of his entire estate (including the trust) among his five children, but in the case of appellant alone the portion which he would otherwise have received was placed in the hands of two of the daughters, Frances and Susan, as trustees, in trust "to have and to hold the same for and during the term of the natural life of the said James W. G. Walker (appellant), paying to him from time to time for his own use and upon his separate receipt the income accruing therefrom, less the expenses of administering said trust and less such further sums as shall be required to keep the principal of said trust fund intact and to make good any losses, by depreciation or otherwise, in the investment thereof." The will gave the trustees authority to sell the trust estate and invest and reinvest the proceeds, and provided that at appellant's death, the principal sum remaining should pass to appellant's children per stirpes.

At the death of Mrs. Walker and when the trust became effective, it consisted of cash and securities of the market value of $109,363.96. Approximately nine and a half years later the market value had increased to above $125,000, but four and a half months after this, the market value had fallen to $62,680. Owing to this decrease, the trustees became doubtful of their right to continue to pay any part of the income to appellant because of the word-

ing of the clause creating the trust, and thereupon they filed their bill making appellant and his children parties and asking the court to construe the will. In the bill they say "plaintiffs believe that the true intention of the testator and the correct construction of the said will is that the fluctuations in the market value of securities held in said trust are to be disregarded by the said trustees and only in the event of actual loss through sale or other disposition during the existence of the life estate is it their duty to apply the income to restore such losses," etc. The case was heard upon the bill, answers, and certain agreed facts.

The trial judge found that *the trustees had not sold or otherwise disposed of any of the securities at a lower price than their value when received or acquired;* that at the time of the delivery of the fund to the trustees on August 3, 1922, the cash and securities had an aggregate market value of $109,363.96; that on December 31, 1931, the market value was $125,884.11; that on May 11, 1932, when the bill was filed, the value was $62,680; and that at the time of the hearing on June 12, 1933, the value was $91,286. On this state of the facts the court construed the trust paragraph of the will to mean "that any reduction in the market value of the securities held in the trust as a whole below their market value at the time of acquisition of the original fund by the trustees is to be made up out of current income"; and that payment of income to the life tenant, the appellant, is only to be made when the trust fund has been restored to its original value. From a final decree in accordance with this view, this appeal was taken.

We think this construction of the will was wrong. The question, as we have seen, arises out of the meaning of the language used in paragraph 8 of the will establishing the trust. In that paragraph it is provided that the whole income of the trust should from time to time be paid to appellant for and during the term of his natural life, less the expenses of administration, "and less such further sums as shall be required to keep the principal of said trust fund intact and to make good any losses, by depreciation or otherwise, in the investment thereof." If the lower court is correct in its construction of this language, the result is to make appellant's income subject to stock-market fluctuations and, as it happens here, to deprive him wholly of income from the filing of the bill to the present time and indefinitely in the future. The testator had been himself a distinguished admiral in the Navy of the United States, and his son (appellant) was likewise, at the time the will was made and at the time of his father's death, an officer in the Navy. His duties frequently took him out of the country for long periods of time, and it was this fact and its logical— indeed its inevitable—consequences which induced his father to place his share of the estate in trust, for in item 2 of the will he says: "My desire and purpose is to treat my children equally, as nearly as possible, in the disposition of my property, but as my son, James W. G. Walker, is in the naval service and will often be so situated that he cannot give proper attention to his own business affairs, I propose to place what I give, devise, and bequeath to him and for his use and benefit, in trust, etc." The good faith of this statement is manifest throughout the will, as also is manifest the fact that in making the provision the testator had his son rather than his grandchildren in mind, for he speaks of the trust as "what I give, devise, and bequeath to him and for his use and benefit," and in the trust itself he says it is established "for my son," while the grandchildren as remaindermen are spoken of only as a class.

From all of this it is obvious that Admiral Walker in creating the trust had in mind to provide appellant an annual sum, which should as nearly as possible equal the return in income which his other children might expect to receive from the shares left outright or nearly outright to them, and which likewise would be managed at all times, but particularly during his absence from the country, with such reasonable care as would provide his son with a sufficient annual stipend to meet his reasonable needs.

The effect of the decision of the lower court, if it stands, will be to destroy this purpose and to leave appellant dependent upon charity in his old age, for it is agreed he is now without other means of support. This is a harsh construction, which we ought not to adopt if the will, construed as a whole, fairly permits a different result. And we think it does.

The law in this jurisdiction, as well as in all the states of the United States, is that the intention of the testator is the basic and fundamental rule in the construction

of wills, and the intention should be determined by construction of the whole will and not from detached paragraphs; and where the intention is apparent, it should be given effect—and this is true—even though to do so involves the rejection of the literal meaning of particular words. DeVaughn v. DeVaughn, 3 App. D. C. 50, 53; Bradford v. Matthews, 9 App. D. C. 438, 446; Washington Loan & Trust v. Hammond, 51 App. D. C. 260, 278 F. 569. But we think in a reasonable construction of this will we are not required to give the particular words used a strained or unnatural meaning to reach the conclusion we do. The holding by the court below that whenever the value of the trust properties, on the basis of stock-exchange quotations, is less than the original value, a loss occurs, is, we think, not justified by a consideration of the clause in question separate from the other provisions of the will; and as applied to the paragraph in question, considered in view of the testator's obvious intent, is wholly incorrect. It is a matter of general knowledge that the word "loss" as used in the federal tax statutes means not a possible or contingent loss but a realized loss, just as the word "gain" means profit obtained through sale or conversion of capital assets. As used generally the word "loss" means that which is gone and cannot be recovered. It is quite true, as commonly used, it may mean that which is withheld or that of which a party is dispossessed, and so business losses are said to occur where debts are due but are uncollectible; but ordinarily where the thing itself—the property—is held intact, undiminished in quantity and unchanged in character (and that is true here), no loss can be properly said to have occurred. Fluctuations in market value do not determine that ultimately there will be loss or gain. The event in either case must abide the sale of the property. Nor do we think the use by testator of the word "depreciation" takes away from the force of what we have said, for while the word may and does frequently mean a fall in value, as used here in conjunction with the word "investment," it could have meant only realized losses by the actual sale or exchange of a particular part of the trust property, for the word "investment" as generally used means to change; to convert into another form, etc. All of this would be obvious if the trust property were land, and we think it is not less so because it consists of corporate stocks and bonds.

Here, as we have already pointed out, Admiral Walker expresses in simple and easily understandable language the intent actuating him in the disposition of his property. We do not need, therefore, to indulge in conjecture to find his purpose. It is apparent it has a twofold object: First, to treat appellant and his brothers and sisters equally, and, second, to provide the former an income for his support secured, as far as possible, against diminution through mismanagement or nonmanagement by reason of his situation. And since, as we have likewise already pointed out, the trustees have not sold or disposed of any part of the trust property at less than its cost price, and the trust therefore remains intact and entire, it would be contrary, as we think, to the literal meaning of the words used in the paragraph in question and even more contrary to the intent and purposes of the testator to hold that a loss had occurred because of a decline in any particular year at any particular time in the market value of the securities forming the corpus of the trust. In this view, the construction of the will by the court below was wrong and should be, and is, reversed.

Reversed.

MARTIN, Chief Justice (dissenting).

I think that the decision of the lower court is right.

The testator in his will expresses a desire to treat his children equally as nearly as possible in the distribution of his estate, but the specific provisions which he makes for them are not uniform. He directs that the sum of $30,000 be placed in the hands of a certain insurance company in trust for his daughter Susan, and a similar sum for his daughter Frances, the income from which is to be paid to them severally during their lifetime, the principal to be paid upon their decease to their surviving children or their descendants. Similar trusts in the sum of $50,000 each are established for his son Henry, and his daughter Sarah, the income from which is to be paid to them severally during their lifetime, the principal to be paid upon their decease to their children or their descendants. A one-fifth interest in the remainder of the estate, less the foregoing specific provisions, is given outright to each of these four children. The will contains no provision for an outright payment in any amount to testator's son James, but his entire share of the estate is placed in trust by that part of the will which is involved in this case. This

reads as follows: "One part or share is to go to my daughters, Frances Pickering Thomas and Susan Walker Fitzgerald, in trust, for my son, James W. G. Walker. They are to hold this share and the sum of thirty thousand (30,000) dollars to be paid to them, in trust, under the fourth item of this will, at the death of my said wife, in trust, to have and to hold the same for and during the term of the natural life of the said James W. G. Walker, paying to him from time to time for his own use and upon his separate receipt the income accruing therefrom, less the expenses of administering said trust and less such further sums as shall be required to keep the principal of said trust fund intact and to make good any losses, by depreciation or otherwise, in the investment thereof, and for this and for all other purposes of this trust to change such investment from time to time, in their discretion, without being held to liability for any loss or depreciation therein, except such as shall arise from their own several wilful default; and upon the death of the said James to divide the principal sum, as the same shall then exist, into as many equal parts or shares as there shall then be living, children of said James, or issue of any deceased child or children taking per stirpes * * *."

By the plain terms of this provision the testator specifically provides that the trustees during the natural life of James shall pay him from time to time the income accruing from the trust estate less such sums as shall be required to keep the principal of the trust fund intact and to make good any losses by depreciation or otherwise in the investment thereof. This provision requires that the trustees shall withhold from the income annually any amount necessary to make good the losses resulting from the depreciation in value of the investments composing it in order to prevent a diminution of the corpus of the fund. The testator provides that the principal of the trust fund should be kept intact. The term "intact" is defined by Webster as "left entire"; synonym "whole." Accordingly, to keep the principal of the trust fund intact plainly means that the corpus of the fund shall not be diminished in value, but shall remain at a value equal to that of the fund when first established. The term "depreciate" is defined by Webster as "to lessen in price or estimated value," and the word "depreciation" is defined as the "state of being depreciated." The term "depreciated," as applied to securities, is well understood as

signifying the amount which the securities have diminished in market value as compared with a prior standard. In common usage it is generally applied to a lessening of the value of securities without a total destruction of their value, and it does not primarily imply a sale of the securities in order to determine or ascertain the amount of the depreciation. Such a sale may be necessary in exceptional circumstances, as in income-tax procedure, in order to establish the exact amount and irrevocable character of the depreciation at a given time, but such a procedure is not required by the language of the will. It may be noted also that the will of the testator was written about ten years before the enactment of the income-tax laws.

It will be observed that the term "depreciation" is used twice by the testator in the course of this paragraph. He first speaks of making good "any losses by depreciation or otherwise in the investment thereof," and, second, he provides that the trustees may change the investment of the fund from time to time in their discretion "without being held to liability for any loss or depreciation therein, except such as shall arise from their own several wilful default." The term "depreciation," as used in the latter clause, does not admit of any other interpretation than a diminution in the value or price of the latter securities as compared with the former ones.

It is true that the general intent and purpose of a testator as manifested in his will is important in construing any of its provisions. In this case, however, there is no place for the application of this rule. The language of the will is unambiguous, and, moreover, the provision as thus construed is not contrary to the general purpose of the will. The testator had in mind not only the care of his son James during his lifetime, but also the preservation of the trust fund intact for the benefit of the children of James or their descendants upon the decease of James. In fact, the language of the will discloses that the testator was quite as solicitous for the welfare of his grandchildren and their descendants as for his own children. His extreme solicitude for the descendants of his children is strikingly manifest in the terms of the will. Under these circumstances it was not unnatural nor unreasonable for the testator to provide that James should receive during his lifetime the income from the trust fund, subject, however, to the continued preservation of the fund at its original amount.

In a construction of a will by the court it must be kept in mind that it is the duty of the court to ascertain and give effect to the intention of the testator as expressed by the terms of the will. The court should not undertake to make or rewrite a will for the testator under the guise of construction, even to do equity or accomplish a more equitable division of the estate or to make the will more liberal and just. It may be in the present case that the court can now write a better will for the testator than he wrote for himself, but this is not consistent with the court's real function in the case.

In my opinion, the decision of the lower court should be affirmed.

Mr. Justice ROBB concurs in this dissent.