**BALDWIN et al. v. NATIONAL SAVINGS & TRUST CO. et al.***

**No. 6454.**

United States District Court of Appeals for the District of Columbia.

Argued Nov. 6, 1935.

Decided Jan. 13, 1936.

---

*Writ of certiorari denied 56 S. Ct. ——, 80 L. Ed. ——.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

Charles D. Hamel and C. F. Rothenburg, both of Washington, D. C., for appellants.

Benjamin S. Minor, H. Prescott Gatley, Arthur P. Drury, and Walter M. Bastian, all of Washington, D. C., for appellees.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District construing the will of Alice Key Browne, specifically items 61 and 62.

Testatrix, a resident of the District, died on March 21, 1905, and her will, dated August 8, 1903, was admitted to probate on April 17, 1905.

After making numerous specific bequests, testatrix by item 59 devised her entire estate, in trust, to the National Safe Deposit, Savings & Trust Company of the District, the former corporate name of appellee, which she also appointed as her executor.

The trustee was empowered to invest and keep invested, with power of sale and reinvestment, all of the "property and estate" of testatrix; to collect and receive the income, interest, and dividends arising therefrom and accruing thereon; and then to pay to (first) testatrix's brother, Daniel Turner, the sum of $80 per month for and during the period of his natural life, in case he should survive testatrix; from and after his death, or from and after testatrix's death should the brother not survive her, to pay to his son, Daniel Turner, Jr., the sum of $80 per month during the term of his natural life, or until the final distribution of the estate, thereinafter provided for; the brother also to "share in the triennial distribution of surplus income hereinafter mentioned."

By the second proviso of item 59, the trustee was directed to pay to testatrix's sister, Elizabeth H. Turner, the sum of $125 per month during the term of her natural life, in case she should survive testatrix; the sister also to "share in the triennial distribution of surplus income hereinafter mentioned." Upon Elizabeth's death the trustee was directed to pay her son, John Temple Grayson, Jr., the sum of $100; and if upon final distribution testatrix's estate amounted to $60,000, to pay him $1,000; if less than that amount, he "shall receive but one-sixtieth ($\frac{1}{60}$) of my estate." Testatrix stated that she discriminated against this nephew because of his conduct towards his mother.

By the third proviso, the trustee was directed to pay testatrix's sister, Ellen K. Messersmith, $80 monthly for life; by the fourth, to pay testatrix's brother, Frank K. Turner, $50 monthly for life; fifth, to pay her sister, Mrs. Janet M. Baldwin, $80 monthly for life; sixth, to pay her sister, Mrs. Emily Virginia Cutts, $80 monthly for life. On the death of each, provision was made for certain monthly payments (for life or until final distribution of testatrix's estate) to designated children of each, and in the case of Frank K. Turner, to his widow.

Provision was then made for annual payments of small sums to certain cousins of testatrix during their lives.

Item 60 provided that if any of the cousins should survive the last survivor of the brothers and sisters of testatrix, the trustee should hold a sufficient amount of the estate to produce the annual income provided for the cousins then surviving, and to set aside such amount until the death of the last surviving cousins, "when the principal sum or sums so held shall be distributed in the manner hereinafter directed in respect to the remaining portion of the rest and residue of my estate."

Item 61 reads: "Should any income from my estate remain after payment of the bequests hereinbefore mentioned, such surplus income shall be invested and allowed to accumulate for a period of three years, when it shall be divided into two equal parts; one of such parts shall be distributed among my brothers and sisters mentioned as beneficiaries of the residuary portion of my estate, or their survivors, share and share alike; and the other portion shall be added to the corpus of my estate. This accumulation shall continue during consecutive periods of three years, and at the end of each period of three years, distribution shall be made in the manner above mentioned."

Item 62 provides: "Upon the death of the last survivor of my four sisters, Ellen K. Messersmith, Elizabeth H. Turner, Janet

M. Baldwin and Emily Virginia Cutts, and of my two brothers, Daniel Turner and Frank K. Turner, I direct my Trustee to convert my entire estate then remaining (with the exception of the parts, if any, to be set aside for my cousins) into cash, and divide the same equally among my nephews and nieces, Edward Turner Messersmith, Murray Baldwin, Richard M. Cutts, Daniel Turner, Junior, Anna Mace and Alice G. Cutts Myers. Should any of said nephews or nieces be then dead, the share which he, she or they would have received if living, shall be paid in equal shares to his, her or their children then living. Should such deceased nephews or nieces have died without issue, his, her or their share or shares shall be divided among the survivors, or their respective issue."

All six of testatrix's brothers and sisters mentioned in the will survived her. Between testatrix's death and the date of the first triennial distribution, June 27, 1908, one brother and one sister died, and all of the one-half of accumulated income on that date was distributed equally to the four surviving; that is, no pro rata portion of the amount distributable was made by the trustee to the estates of the deceased brother or sister. Similar distributions were made to the four survivors at succeeding triennial periods on April 19, 1911, and April 20, 1914. The trustee continued to make distribution equally to the brother and sisters surviving on the dates of succeeding triennial periods, until on April 26, 1926, the sole survivor was Janet M. Baldwin, and the entire amount was distributed to her at that time and on succeeding triennial distribution dates. The final triennial distribution made by the trustee was on April 17, 1932, all of the one-half of accumulated income being paid to the sole survivor, Janet M. Baldwin. She died January 22, 1934, and the accrued income since the last triennial distribution (over a period of about 19 months) then amounted to $27,406.66. Her executors notified appellee trustee of their claim that deceased, Janet M. Baldwin, had a vested interest in one-half of the income accrued from the date of the last triennial distribution to the date of her death. The nieces and nephews of testatrix Alice Key Browne mentioned in item 62 (other than appellant Murray Baldwin), on the other hand, claimed that the whole of the accrued income should be distributed to them under the terms of item 62.

Thereupon, the trustee brought this bill to construe the will, and, after hearing, the court below, being of opinion that under the terms of the will the surplus income here involved should not be apportioned upon the death of Janet M. Baldwin, last survivor of testatrix's brothers and sisters, and that her estate was not entitled to share therein, decreed that the trustee "distribute the whole of the surplus income accrued under Item LXI of said last will and testament since the 17th day of April, 1932, the date of the last triennial account of said trustee, to the nephews and nieces named by said decedent and in the manner designated by Item LXII."

According to Blackstone, a will is "the legal declaration of a man's intentions, which he wills to be performed after his death." 2 Bl.Com. 499. The first and most important rule in the exposition of wills, to which all other rules must yield, is that the intent of the testator as expressed in his will shall prevail, provided it be consistent with the rules of law. The ties which connect the testator with his legatees, the affection subsisting between them, and the motives reasonably supposed to operate with him, are all entitled to consideration in expounding doubtful words and in ascertaining the meaning in which the testator used them. Smith v. Bell, 6 Pet. 68, 75, 8 L.Ed. 322; Gibson v. Gibson, 53 App.D.C. 380, 292 F. 657; Rutherford v. American Security & Trust Co., 56 App. D.C. 214, 12 F.(2d) 155. In determining the intent of the testator, little aid is derived from a resort to formal rules or a consideration of judicial determinations in other cases apparently similar. It is a question in each case of the reasonable interpretation of the words of the particular will. Robison v. Orphan Asylum, Portland, 123 U.S. 702, 707, 8 S.Ct. 327, 31 L Ed. 293.

In the present case, item 61 directs that, after the payment of the trust bequests from income, the "surplus income shall be invested and allowed to accumulate for a period of three years, *when* it shall be divided into two equal parts; one of such parts shall be distributed among my brothers and sisters mentioned as beneficiaries of the residuary portion of my estate, or their survivors, share and share alike; and the

other portion shall be added to the corpus of my estate. * * *" (Italics ours.)

█ It will be observed that testatrix's first disposition of surplus income is that it shall be allowed to accumulate for a period of 3 years. The testatrix next directs that at the expiration of the 3-year period the trustee shall divide it into two equal parts. And finally the trustee shall distribute one-half among her brothers and sisters, or their survivors, share and share alike. In our view, the testatrix intended that the fund, composed of one-half of accumulated income, should be distributed to the brothers and sisters who might be living at the end of the 3-year period, or periods.

We may note that testatrix refers to them as "my brothers and sisters mentioned as beneficiaries of the residuary portion of my estate." Although their identity is clear, this description is inaccurate, for they are not the "beneficiaries of the residuary portion" of her estate. The residuary legatees are the nephews and nieces mentioned in item 62. The brothers and sisters were beneficiaries only of monthly sums for life, payable from the *income* of the trust estate.

Testatrix in the first proviso of the trust stated, "My brother [Daniel] shall also share in the triennial distribution of surplus income hereinafter mentioned." A like provision was stated in the second proviso as to her sister, Elizabeth. Certainly these provisions standing alone indicate that testatrix intended that her brother Daniel and sister Elizabeth should share in the distribution only if living at the end of a triennial period. She did not provide in item 61 that they should share in the *income*, distributable triennially; but that they should share in the *distribution* which should be made triennially from the *fund* composed of income. She directed that surplus income should be distributed among her brothers and sisters, *or their survivors*. We think testatrix intended the survivors on the date of the triennial period to receive the distribution.

In item 62, disposing of the entire trust estate remaining after the death of the last surviving brother or sister and dividing it equally among her named nephews and nieces (John Temple Grayson, Jr., excepted, whose participation in the final distribution is governed by the terms of the second proviso of item 59, above mentioned), provision is made for distribution of the share of the nephews or nieces who might then be dead to the surviving children of each, if any.

Had testatrix in item 61 not intended that the distribution should be made only to those brothers or sisters surviving at the end of a triennial period, in other words, had she intended that the surplus income should vest immediately in the brothers and sisters who survived her, she would have known that the share of each would descend to the heirs of each, and that in the case of her sister Elizabeth her share might descend to Elizabeth's son, John Temple Grayson, Jr. In view of the provision of her will concerning him, is it conceivable that she would intend such a disposition?

█ On the last survivor's death, the trustee by item 62 was directed to convert testatrix's "entire estate" then remaining into cash. Obviously, the "entire estate" embraced the corpus as well as any income therefrom which had accumulated between the last triennial period and the date of the death of the last survivor. See American Security & Trust Co. v. Blair, 63 App.D.C. 170, 70 F.(2d) 774. The legal title to the corpus was in the trustee, and during the "three year periods" the legal title to the income was in the trustee. At the end of the period of three years, the right to the half of accumulated income became vested in the brothers and sisters then surviving.

This construction of the will is more consonant with the purposes of testatrix as shown by the whole instrument than the construction sought by appellants.

Decree affirmed.

Affirmed.