**ELLERY** et al. v. WASHINGTON LOAN
& TRUST CO. et al.

No. 7426.

United States Court of Appeals for the
District of Columbia.

Decided June 24, 1940.

George C. Gertman and David A. Hart, both of Washington, D. C., for appellants.

James C. Wilkes, James E. Artis, Arthur Peter, Arthur C. Keefer, and Nita S. Hinman, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

The testatrix, Paulina Rocca, a resident of the District of Columbia, died on September 4, 1907. Prior to her death she made an advancement to one of her daughters, Mary Hall, in the amount of $9500. In her will she devised and bequeathed all her estate, except $500, to be held in trust. Concerning the advancement theretofore made to Mary, the will provides: "* * * And whereas I have heretofore at the request of my daughter Mary Hall advanced to her the sum of ninety five hundred dollars with full knowledge on her part that the same was to be accepted as an advance to her from my estate, now I direct that in ascertaining the amount of said residue of my estate said sum of ninety five hundred dollars (without interest) be included said residue of my estate to be held by my said named trustee as follows: (Charging

Mary's share with the said advancement.)" Immediately following this provision, the will contains six items, identical in language, except for variations as to the names of her children and in other minor respects not here important. The first one reads as follows: "One sixth thereof hold for the use of my daughter Mary Hall, and the income arising therefrom pay over to her during her life, and on her death leaving children pay over said income to said children in equal shares, per stirpes and not per capita, until her youngest living child arrives at the age of twenty one years, and then pay over and convey the same in equal shares to said children."

On May 1, 1937, Mary Hall, the last of the children of testatrix to survive her, died. Thereafter, on June 17, 1937, The Washington Loan and Trust Company, substituted trustee, brought suit in the court below and asked for instructions concerning the proper interpretation of the will and the distribution of the estate. This appeal was taken from the decree of the lower court by two of Mary Hall's three children, who, together with the other beneficiaries and successors in interest, were named as defendants in the court below. That portion of the decree which is challenged here reads as follows:

"3. That the sum of $9500.00 advanced by Paulina Rocca to Mary Hall be thrown into hotchpot in the distribution of the estate of the said Paulina Rocca and charged against the one-sixth share of the estate of Paulina Rocca devised and bequeathed under the provisions of her will to Mary Hall and her children.

"4. The advancement of $9500.00 to Mary Hall is chargeable with interest which has been paid by Mary Hall and no further interest on said advancement is chargeable.[1]"

■■ Appellants contend that the lower court erred: "In adjudging that by her will, Mrs. Rocca charged the advancement against the estate which she devised in fee to Mary Hall's children;" and that, instead, she intended the advancement to be charged against the income from one-sixth of the residue, alone. They argue that Mary's children take nothing by succession from their mother; instead, that they take independently of her and directly from their grandmother. But this is not important. The question is not how the succession takes place, but precisely against what the advancement is intended to be charged.[2] In the present case it was charged against "Mary's share" and the question is, what is "Mary's share" within the meaning of the will. In answering this question, the fundamental and basic applicable rule of law requires an ascertainment of the intent of the testatrix[3] arrived at by a reasonable interpretation of the words used by her in the will.[4] Placing ourselves, figuratively speaking, in the position of the testatrix, in order to discover from her standpoint[5] the significance of the words "Mary's share," and constru-

---

[1] In its conclusions of law filed on the same day the court said: "As to the advancement to Mary Hall, I think this should be thrown into hotchpot in the distribution of the estate. Her estate should be charged with interest on this advancement; such interest, however, having already been paid by Mary Hall, no further interest is chargeable."

In an opinion filed July 22, 1938, the court said: "As to the advancement to Mary Hall, I think that this should be thrown into hotchpot in the distribution of the estate. Her estate should be charged with interest on this advancement, but the result will be that it will receive its proportionate part of both the advancement and interest."

[2] See Treadwell v. Cordis, 5 Gray, Mass., 341, 354–357.

[3] Evans v. Ockershausen, 69 App.D.C. 285, 290, 100 F.2d 695, 700, certiorari denied, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034; Young v. Munsey Trust Co., 71 App.D.C. —, 111 F.2d 514; Smith v. Bell, 6 Pet., U.S., 68, 76, 8 L. Ed. 322; Adams v. Cowen, 177 U.S. 471, 20 S.Ct. 668, 44 L.Ed. 851.

[4] Walker v. Thomas, 64 App.D.C. 148, 150, 75 F.2d 667, 669, 99 A.L.R. 713; Baldwin v. National Sav. & Trust Co., 65 App.D.C. 174, 176, 81 F.2d 901, 903, certiorari denied, 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393; Robison v. Female Orphan Asylum, 123 U.S. 702, 707, 8 S. Ct. 327, 31 L.Ed. 293. Smith v. Bell, 6 Pet., U.S., 68, 75, 8 L.Ed. 322: "It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' 2 Bl.Com. 499. These intentions are to be collected from his words, and ought to be carried into effect, if they be consistent with law." [Italics supplied]

[5] Blake v. Hawkins, 98 U.S. 315, 324, 25 L.Ed. 139; Adams v. Cowen, 177 U. S. 471, 475, 20 S.Ct. 668, 44 L.Ed. 851.

ing the will in its entirety as we are required to do,[6] in our opinion they were intended to mean the share *of the residue* left for the use of Mary and her children. While it is not clear from the words themselves what testatrix intended by "Mary's share," when considered in a light consonant with the rest of the will, their meaning becomes evident. Clearly, they were used to connote an interest greater than the mere equitable right of Mary to receive the income from one-sixth of the residue for life, as appellants contend.[7]

■ Appellants' contention depends upon finding, in the pertinent language of the will, evidence that the testatrix intended to distinguish between "Mary's share" and the estate which she devised in fee to Mary's children; but there is no such evidence in the will. The language which must be interpreted in deciding this point is, for convenience, again set out, as follows:

"* * * *said residue* of my estate to be held by my said named trustee as follows: (charging *Mary's share* with the said advancement.)

"*One sixth thereof* hold for the use of my daughter Mary Hall, and the *income* arising *therefrom* pay over to her during her life, and on her death leaving children pay over *said income* to said children in equal shares, per stirpes and not per capita, until her youngest living child arrives at the age of twenty one years, and then pay over and convey *the same* in equal shares to said children." [Italics supplied]

The words descriptive of the estate devised to the children are *the same*. These words refer back to the words *one sixth thereof*. Careful analysis of the quoted language proves that they can have no other reference. The words, *one sixth thereof*, in turn, refer back to *said residue*. Moreover, the trustee is directed—upon the death of Mary and until her youngest living child arrives at the age of twenty one—to pay over *said income* to said children. *Said income* refers to the *income* arising *therefrom;* that, in turn, refers to *one sixth thereof;* which, in turn, refers to *said residue*. Now it is to be observed that the words *one sixth thereof* are the identical words which testatrix used to describe *Mary's share*. It was the income arising *therefrom* (one-sixth of the residue) which the trustee was directed to pay over to Mary during her life. And it is to be observed further that the words *said residue* were used by testatrix in directing (1) that the trustee should hold the same, and (2) that in holding said residue he should charge Mary's share thereof with the advancement.

We read, therefore, in this language of the will, a perfect sequence of consistent references from one statement to the other, indicating the intention of the testatrix that the undivided one-sixth share of the residue of the estate should be used as the common measure (1) of Mary's share; (2) of the share against which the advancement was to be charged; (3) of the share from which the income was to be paid to Mary during her lifetime; (4) of the share from which the income was to be paid to Mary's children, after her death and prior to the attainment of majority by the youngest; (5) of the share of the estate devised in fee to Mary's children. On the other hand, there is no sentence, clause or word in the will which suggests a different meaning, or that the testatrix intended to make the distinction for which appellants contend.

■■ Moreover, in providing for the devise over in event of the death of any of her children leaving no descendants, the testatrix directed that "the *part of the residue* above devised in trust" for such children should be held upon "the same trusts as hereinbefore provided *for the shares devised for the use of*" the other children. The testatrix thereby gave to the word "share" its ordinary meaning,[8] *i. e.*, a definite part or portion of the residue.[9] It was

6 Evans v. Ockershausen, 69 App.D.C. 285, 290, 100 F.2d 695, 700, certiorari denied, 306 U.S. 633, 59 S.Ct. 462, 83 L. Ed. 1034; Walker v. Thomas, 64 App.D. C. 148, 150, 75 F.2d 667, 669, 99 A.L.R. 713.

7 Cf. Treadwell v. Cordis, 5 Gray, Mass., 341.

8 Rady v. Staiars, 160 Va. 373, 168 S. E. 452: "The primary significance of words should ordinarily attach and does attach, unless it is manifest from the will itself that other definitions are intended." Evans v. Ockershausen, 69 App.D.C. 285, 292, 100 F.2d 695, 702, certiorari denied, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034.

9 See In re Bond & Mortgage Guarantee Co., 157 Misc. 240, 283 N.Y.S. 623, 639. Cf. Glover v. Condell, 163 Ill. 566, 582, 45 N.E. 173, 178, 35 L.R.A. 360.

this share of the residue then that was charged with the advancement and not the income received by Mary, for that income was not shared by her with anyone. [Italics supplied]

To support their contention appellants rely, also, upon a contract of December 31, 1907, between the trustee and the children of the testatrix, the pertinent provisions of which are set out in the margin.[10] In other words, we are asked to consider, for the purpose of determining the intent of the testatrix, a contract, of which she had no knowledge, purporting to interpret her will, made after her death, between persons of whom not one is a party in interest in the present case. To do so would violate all the applicable rules heretofore stated. So basic and fundamental are those rules that little aid can be obtained in the interpretation of a will even from consideration of judicial determinations in other cases, apparently similar, or by resort to formal rules of interpretation.[11] It is obvious that efforts at interpretation by persons untrained in such matters are of even less value. While under some circumstances parties in interest may bind themselves by the construction which they may place upon the provisions of a will,[12] they have no power to bind others who take directly under the will, as do all the interested parties in the present case.[13] In any event, their contract, whatever they intended it to mean, constitutes no basis upon which we should reject the clearly

expressed and legally consistent purposes of the testatrix, in favor of an interpretation which would fly in the face of her carefully planned design to distribute her estate equally among her children and their descendants.[14]

Appellants contend, also, that the court erred: "In adjudging that the advancement of $9,500 bore interest." They rely upon the use by the testatrix of the words *without interest* in that item of her will which reads: "* * * in ascertaining the amount of said residue of my estate said sum of ninety five hundred dollars (without interest) be included, said residue of my estate to be held by my said named trustee as follows: * * *" But the position, in the sentence, of the words *without interest* shows that the formula thus provided contemplated that this act of inclusion—in the process of ascertaining the residue—should take place immediately upon the death of the testatrix and the coming into possession by the trustee. This is shown by the fact that only by so doing could the trustee carry out his further duties specified in the will, i. e., that he hold the residue "for the use of"—Mary—David—Giovanni—and the others; and that he pay over "the income arising therefrom" during the life of Mary and during the lives of the others. Consequently, the words *without interest* had no application beyond the time of inclusion of the advancement for the purpose of ascertaining the residue; and their use in the will

---

10 "Whereas the said Mary Hall owes to the estate of Paulina Rocca, deceased, the sum of Nine thousand five hundred ($9500.00) dollars money advanced to her by the said deceased, the said sum bearing interest at Six (6%) per centum per annum, which said sum under the terms of the will of the said deceased is to be deducted from said Mary's share of the income of said estate as one of the devisees of the said will.

"Now therefore, in consideration of One ($1.00) Dollar and other good consideration, it is hereby agreed by the parties hereto, devisees under said will that the interest charge upon said indebtedness shall be reduced from Six (6%) per cent to four (4%) per cent and instead of paying the said Six (6%) per cent interest, in the future, she is to pay but four (4%) per cent, which is to be deducted from her share of the income of said estate.

"And it is further agreed that the original of this agreement be placed in

the hands of John B. Rocca, Executor and Trustee of the last will and testament of the said Paulina Rocca deceased as a notice and authority to act under this agreement as above written."

11 Baldwin v. National Sav. & Trust Co., 65 App.D.C. 174, 176, 81 F.2d 901, 903, certiorari denied, 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393; Evans v. Ockershausen, 69 App.D.C. 285, 290, 100 F.2d 695, 700, certiorari denied, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034; Robison v. Female Orphan Asylum, 123 U.S. 702, 707, 8 S.Ct. 327, 31 L.Ed. 293.

12 Campbell v. Fowler, 226 Ky. 548, 553, 554, 11 S.W.2d 423, 425.

13 Pate v. French, 122 Ind. 10, 14–15, 23 N.E. 673, 675.

14 De Raismes v. Rice, 125 N.J.Eq. 21, 4 A.2d 25; Campbell v. Fowler, 226 Ky. 548, 11 S.W.2d 423; Quinton v. Kendall, 122 Kan. 814, 824, 253 P. 600, 604; Stone v. Stine, 105 Neb. 33, 37, 178 N.W. 838, 839.

provides no support for appellants' contention.

■■ Appellants attempt, also, to support their contention by arguing that the same considerations which influenced the testatrix to give to her two sons rent-free use of her house,[15] should be assumed to have influenced her, also, concerning the advancement to Mary; hence, that she must have intended Mary to have interest-free use of the advancement. But a reading of the will clearly reveals a contrary intention. In fact, a comparison of the two relevant items is highly persuasive of the correctness of the trial court's determination that she intended the advancement to bear interest.[16] The first item contains no intimation that the suggestion for rent-free use and occupation came from the sons; the second expressly points out that the advancement was made "at the request of my daughter Mary Hall" and indicates a change in the original plan of distribution. The first contains no intimation that the sons even had knowledge of her intention to give them rent-free use of the house; the second indicates that mother and daughter had discussed the matter fully and carefully, and that the advancement was made with full knowledge on Mary's part that the same was to be accepted as an advance. If testatrix had had any idea of exempting the $9500 advancement from immediate inclusion in the residue, or from interest charges, it is reasonable to suppose that she would have said so, in unmistakable language, such as that which she used in the first item, i. e., "on the death of the survivor said house to become a part of the residue of my estate and take the course provided for said residue." Instead, the language which she did use, in the second item, is convincing of the fact that she intended the advancement to be integrated into the residue of her estate at the time of her death in such manner that the whole residue as then constituted could be used at once and thenceforward, to carry out her dominant purpose of equal enjoyment thereof by her beneficiaries. And, in order to accomplish this purpose, she must have intended—when she directed the trustee to distribute the income of the residue—that the whole residue, including the advancement, should produce income. Otherwise the provision of the will directing that the amount of the advancement be included in ascertaining the residue, which residue was to be held in trust in six equal parts, would be meaningless and the testatrix' directions would constitute a mere useless bookkeeping entry. In that event, the amount added to the residue at her death would, upon distribution of that residue, have to be deducted again in order to ascertain the shares to be distributed. If that had been the intention of the testatrix she could have accomplished her purpose by directing the trustee to deduct the amount of the advancement from Mary's share, upon distribution to her children, without more. There exists a strong presumption in the construction of wills that the different provisions were intended to be harmonious with each other and, therefore, so far as possible,[17] effect should be given to all. Under the circumstances of the present case we cannot attribute to the testatrix an intention which produces a contrary result.

■ Our conclusion upon this point is supported also by the fact that Mary Hall, the donee of the advancement, voluntarily entered into the contract[18] for the payment of interest, and paid interest for thirty years without questioning her liability therefor. Moreover, all the parties in interest who joined in the contract of December 31, 1907, apparently interpreted it, over the years, to mean that she was required to pay interest on the advancement. Under the circumstances, it is proper for us to adopt this construction, especially as the will may be, reasonably, so interpreted.[19]

---

[15] "To permit my sons Giovanni Rocca and David Rocca to use and occupy my house No.: 207 F Street, north-west, in the city of Washington, in the District of Columbia, free of rent during their joint lives and the life of the survivor of them, and on the death of the survivor said house to become a part of the residue of my estate and take the course provided for said residue."

[16] See Smith v. Bell, 6 Pet., U.S., 68, 75, 8 L.Ed. 322.

[17] Cronan v. Cronan, 286 Mass. 497, 500, 190 N.E. 721, 722; Dealy v. Keatts, 157 Miss. 412, 128 So. 268; Cumming v. Pendleton, 112 Conn. 569, 153 A. 175; In re Torchiana's Estate, 292 Pa. 470, 141 A. 294; German v. Frey Planing Mill Co., 257 Ky. 128, 77 S.W.2d 414; Whitehurst v. White, 160 Va. 859, 169 S.E. 724; Hickey v. Costello, 80 Colo. 461, 251 P. 595.

[18] See note 10, supra.

[19] See Starr v. Starr, 132 N.Y. 154, 159, 30 N.E. 384, 385; Dorrance v. Dorrance, 3 Cir., 238 F. 524; Guilford v.

Appellants' third contention is that: "Mary Hall satisfied the advancement during her lifetime by paying the trustees $10,954.73 under the contract of December 31, 1907." But the lower court found to the contrary, and in our view correctly, that: "* * * The advancement of $9500.00 to Mary Hall has never been deducted by the trustees from the one-sixth share given and devised for the benefit of Mary Hall and her children. The income from the entire estate has been collected by the trustees thereof and allotted equally to the life beneficiaries of the respective trusts in accordance with the provisions of the will, including the trust established for the benefit of Mary Hall and her children. From the equal share thus allotted to Mary Hall from 1907 to May 1, 1937, there was charged and deducted therefrom by the executor and trustees under the will of Paulina Rocca the aggregate sum of $10,954.73 as interest upon the aforesaid advancement of $9500.00, of which sum $2,738.68 was returned to the said Mary Hall by said executor and trustees as her share thereof, making a net deduction of $8,216.05 from said share of Mary Hall, which deduction was in full payment of all interest on the advancement of $9500.00 to May 1, 1937." As the advancement was chargeable with interest, and as the $10,954.73 was paid as interest, it necessarily follows that the amount paid cannot be applied as a satisfaction of the advancement.

Moreover, assuming, solely for the purpose of argument, that appellants are correct in their contention that Mary Hall was not liable for the payment of interest upon the advancement, still it is clear that the court properly refused to apply the amount paid in liquidation of the amount of the advancement. Any claim which may have arisen in her favor, against the trustee or other persons as a result of such payments,[20] being purely personal—and the residue alone being chargeable with the advancement—passed upon her death in 1937 to her legal representative. He is not a party to this proceeding and, therefore, the question of the legality of interest payments cannot be injected into the case at the instance of one appearing independently of her interests.[21]

We have considered carefully all the other contentions of appellants and find them to be without merit.

Affirmed.

---

Gardner, 180 Iowa 1210, 1223, 162 N. W. 261, 265; In re Kelly's Estate, 177 Minn. 311, 225 N.W. 156, 67 A.L.R. 1268. See also, Hill's Adm'rs v. Hill, 127 Va. 341, 350, 103 S.E. 605, 608.

20 Cf. Carpenter v. Southworth, 2 Cir., 165 F. 428, 429; Goldman v. Staten Island Nat. Bank & Trust Co., 2 Cir., 98 F.2d 496, 498; Leonard v. Gage, 4 Cir., 94 F.2d 19, 23, certiorari denied, 303 U. S. 653, 58 S.Ct. 752, 82 L.Ed. 1113;

5 Williston, Contracts (Rev.Ed.1937) § 1590. Cf. also, Hibbs v. Beall, 41 App. D.C. 592, 599. See for reference purposes, 48 C.J. 755 et seq.

21 Case v. Kelly, 133 U.S. 21, 29, 10 S.Ct. 216, 33 L.Ed. 513; Ducker v. Butler, 70 App.D.C. 103, 104 F.2d 236, and authorities there cited; Green v. Brophy, 71 App.D.C. ——, 110 F.2d 539, 541–542.